Traci L. Shafroth (S.B.N. 251673)
        tshafroth@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, California 94104-1501
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500

Attorneys for Defendant
ABBOTT LABORATORIES

**E-filing**

ORIGINAL
FILED

SEP 4 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN WENDELL AND LISA WENDELL, for themselves and as successors in interest to MAXX WENDELL, DECEASED, | Case No: **CV 09  -4124** |
| Plaintiffs, | **NOTICE OF REMOVAL** |
| v. | |
| JOHNSON & JOHNSON; CENTOCOR, INC.; ABBOTT LABORATORIES; SMITHKLINE BEECHAM d/b/a GLAXOSMITHKLINE; TEVA PHARMACEUTICALS USA; GATE PHARMACEUTICALS, a division of TEVA PHARMACEUTICALS USA; PAR PHARMACEUTICALS; MYLAN LABORATORIES, INC.; BOEHRINGER INGELHEIM CORPORATION; BOEHRINGER INGELHEIM ROXANE, INC., a subsidiary of BOEHRINGER INGELHEIM CORPORATION; ROXANE LABORATORIES, INC., a subsidiary of BOEHRINGER INGELHEIM CORPORATION; and DOES 1 through 150, inclusive, | |
| Defendants. | |

NOTICE OF REMOVAL

1        Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, Defendant Abbott Laboratories

2 files this Notice of Removal to remove this civil action from the Superior Court of the State of

3 California, in and for the County of San Francisco, where it was filed as Case No. CGC-09-

4 490051, to the United States District Court for the Northern District of California.  In support of

5 this Notice of Removal, Abbott Laboratories states as follows:

6       1.     Abbott Laboratories is named as a defendant in a civil action pending in the

7 Superior Court of the State of California, in and for the County of San Francisco, styled as

8 *Stephen Wendell and Lisa Wendell, for themselves and as successors in interest to Maxx*

9 *Wendell, deceased, Plaintiffs, v. Johnson & Johnson; Centocor, Inc.; Abbott Laboratories;*

10 *Smithkline Beecham d/b/a Glaxosmithkline; Teva Pharmaceuticals USA; Gate Pharmaceuticals,*

11 *a division of Teva Pharmaceuticals USA; Par Pharmaceuticals; Mylan Laboratories, Inc.;*

12 *Boehringer Ingelheim Corporation; Boehringer Ingelheim Roxane, Inc., a subsidiary of*

13 *Boehringer Ingelheim Corporation; Roxane Laboratories, Inc., a subsidiary of Boehringer*

14 *Ingelheim Corporation; and Does 1 through 150, inclusive, Defendants.*

15       2.     The action involves allegations related to the design, manufacture, labeling and

16 sale by defendants of a number of prescription medications for the treatment of inflammatory

17 bowel disease and ulcerative colitis.  Specifically, plaintiffs assert that decedent's treatment with

18 Remicade®, Humira®, and/or Purinethol® (mercaptopurine), singularly or in combination,

19 resulted in decedent's lymphoma and death.  (First Am. Compl. ¶¶ 2, 19–29, 58-68)

20       3.     Plaintiffs assert several causes of action against defendants:  fraudulent

21 misrepresentation and intentional concealment (Count I); negligence, recklessness, and gross

22 negligence (Counts II & IV); negligent misrepresentation (Count III); negligence per se (Count

23 V); strict liability (Count VI); breach of express warranty (Count VII); breach of implied

24 warranty (Count VIII); violation of California Business & Professions Code Section 17200, *et*

25 *seq.* (Count IX); and wrongful death (Count X).

26       4.     Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders

27 served on or by defendants in this action are attached as Exhibit A.

28

1

**DIVERSITY JURISDICTION**

2      5.      The controversy between plaintiffs and defendants is a controversy between

3  citizens of different states:

4      (a)     Plaintiffs Stephen and Lisa Wendell are residents and citizens of California (and

5              were at the time the complaint was filed).  (First Am. Compl. ¶ 12)

6      (b)     Defendant Johnson & Johnson is not a citizen of California.  Johnson & Johnson

7              is (and was at the time the complaint was filed) a New Jersey corporation with its

8              principal place of business in New Jersey.  (*Id.* ¶ 19)

9      (c)     Defendant Centocor Ortho Biotech Inc. (served as Centocor, Inc.) is not a citizen

10             of California.  Centocor Ortho Biotech Inc. is (and was at the time the complaint

11             was filed) a Pennsylvania corporation with its principal place of business in

12             Pennsylvania.  (*Id.* ¶ 20)

13     (d)     Defendant Abbott Laboratories is not a citizen of California.  Abbott Laboratories

14             is (and was at the time the complaint was filed) an Illinois corporation with its

15             principal place of business in Illinois.  (*Id.* ¶ 21)

16     (e)     Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline is not a

17             citizen of California.  SmithKline Beecham Corporation d/b/a GlaxoSmithKline is

18             (and was at the time the complaint was filed) a Pennsylvania corporation with a

19             principal place of business in Pennsylvania.  (*Id.* ¶ 22)

20     (f)     Defendant Teva Pharmaceuticals USA, Inc. is not a citizen of California.  Teva

21             Pharmaceuticals USA, Inc. is (and was at the time the complaint was filed) a

22             Delaware corporation with its principal place of business in Pennsylvania.  (*Id.* ¶

23             23)

24     (g)     Defendant Gate Pharmaceuticals is not a citizen of California.    Gate

25             Pharmaceuticals is (and was at the time the complaint was filed) a division of

26             Defendant Teva Pharmaceuticals USA, Inc., which is a Delaware corporation

27

28

1    with its principal place of business in Pennsylvania.  Gate Pharmaceuticals is not

2    a separate legal entity.  (*Id.* ¶ 24)

3    (h)    Defendant Par Pharmaceuticals is not a citizen of California.  Par Pharmaceuticals

4    is (and was at the time the complaint was filed) a Delaware corporation with its

5    principal place of business in New York.  (*Id.* ¶ 25)

6    (i)    Defendant Mylan, Inc. (served as Mylan Laboratories, Inc.) is not a citizen of

7    California.  Mylan, Inc. is (and was at the time the complaint was filed) a

8    Pennsylvania corporation with its principal place of business in Pennsylvania.

9    (*Id.* ¶ 26)

10   (j)    Defendant Boehringer Ingelheim Corporation is not a citizen of California.

11   Boehringer Ingelheim Corporation is (and was at the time the complaint was

12   filed) a Nevada corporation with its principal place of business in Connecticut.

13   (*Id.* ¶ 27)

14   (k)    Defendant Boehringer Ingelheim Roxane, Inc. is not a citizen of California.

15   Boehringer Ingelheim Roxane, Inc. is (and was at the time the complaint was

16   filed) a Delaware corporation with its principal place of business in Ohio.  (*Id.*

17   ¶ 28)

18   (l)    Defendant Roxane Laboratories, Inc. is not a citizen of California.  Roxane

19   Laboratories, Inc. is (and was at the time the complaint was filed) a Nevada

20   corporation with its principal place of business of Ohio.  (*Id.* ¶ 29)

21   (m)    The citizenships of the fictitious defendants (Does 1-150) do not count for

22   purposes of establishing diversity jurisdiction. 28 U.S.C. § 1441(a).

23   6.    The amount in controversy in this matter exceeds the sum of $75,000.00,

24   exclusive of interest and cost:

25   (a)    Although plaintiffs' complaint seeks an unspecified amount of damages—

26   consistent with Cal. Code of Civ. Pro. § 425.10(b)—it is more likely than not that

27   the amount in controversy exceeds the sum of $75,000.00.  *See Guglielmino v.*

28

1    *McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (preponderance standard

2    applies where no jurisdictional amount is alleged).  This standard is met where it

3    is apparent from the face of the complaint that the damages sought would exceed

4    $75,000.00.  *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th

5    Cir. 1997) (adopting "facially apparent" standard for amount in controversy).

    (b)    Here, plaintiffs allege that the decedent suffered injuries and died as a result of

7    treatment with defendants' prescription medications.  (First Am. Compl. ¶¶ 2,

8    17–18, 58–68)  Plaintiffs seek compensatory damages, medical and other special

9    damages, loss of earnings and earnings capacity, medical monitoring, punitive

10   damages, disgorgement of profits, wrongful death damages, and attorneys' fees.

11   (*Id.* at pp. 38–42)

    (c)    It is apparent from the face of the complaint that such damages, if proven as a

13   matter of law and fact, would exceed $75,000.00.  *See, e.g., Geographic*

14   *Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, No. C 08-04624 SI, 2008 WL

15   5411530, at *2 (N.D. Cal. Dec. 29, 2008) ("[i]f the [c]ourt considers only the

16   state-court complaint, it would appear that the amount in controversy in this

17   wrongful death case exceeds the jurisdictional amount"); *Corbelle v. Sanyo Elec.*

18   *Trading Co.*, No. C-03-1509 EMC, 2003 WL 22682464, at *3 (N.D. Cal. Nov. 4,

19   2003) ("case[s] where the complaint alleges wrongful death . . . would clearly

20   establish an amount in controversy in excess of $75,000"); *Campbell v.*

21   *Bridgestone/Firestone, Inc.*, 2006 WL 707291, at *1–3 (E.D. Cal. Mar. 17, 2006)

22   (amount in controversy requirement satisfied where plaintiff sought compensatory

23   damages for wage loss, medical expenses, and loss of earning capacity in a

24   products liability action arising out of a rollover car accident); *Simmons v. PCR*

25   *Tech.*, 209 F.Supp.2d 1029, 1031, 1035 (N.D. Cal. 2002) (amount in controversy

26   requirement satisfied where plaintiff sought compensatory damages, including

27

28

1   medical expenses and lost wages, punitive and emotional distress damages, and
2   attorneys' fees in a racial discrimination and retaliation action).

3      7.      Accordingly, because the controversy in this civil action is wholly between
4   citizens of different states, and because the amount in controversy exceeds the sum of
5   $75,000.00, exclusive of costs and interest, Defendant Abbott Laboratories may remove this
6   action pursuant to 28 U.S.C. §§ 1332 & 1441.

7   **FEDERAL QUESTION JURISDICTION**

8      8.      Plaintiffs' complaint is also removable to federal court because plaintiffs' state-
9   law claims are completely preempted by federal law. *See Beneficial Nat'l Bank v. Anderson*, 539
10  U.S. 1, 8 (2003). The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA")
11  and its implementing regulations as well as the Public Health Service Act, 42 U.S.C. § 201 *et*
12  *seq.* ("PHSA") and its implementing regulations wholly displace the state-law causes of action
13  here because it would be impossible for defendants to comply with the state-law duties to modify
14  the drug labeling or design as referenced in the complaint without violating federal law. *See*
15  *Wyeth v. Levine*, 129 S.Ct. 1187, 1196-99 (2009). Moreover, plaintiffs' state-law tort action here
16  would frustrate the achievement of the objectives of the FDCA, the PHSA, and their
17  implementing regulations. *Id.* at 1199-1204.

18     9.      In addition, plaintiffs' complaint is also removable to federal court because the
19  claims raise a substantial federal question and therefore provide original federal question
20  jurisdiction over this action under 28 U.S.C. § 1331. *See* 28 U.S.C. § 1441(a); *Grable & Sons*
21  *Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (federal question
22  jurisdiction proper where a state-law claim necessarily raises a stated federal issue, actually
23  disputed and substantial, which a federal forum may entertain without disturbing any
24  congressionally approved balance of federal and state judicial responsibilities).

25     10.     The statutes, laws, regulations, and safety codes pertaining to all of the issues
26  raised by plaintiffs' claims (*e.g.*, drug design, manufacture, testing, labeling, marketing, and
27  monitoring) are federal. The United States Food and Drug Administration ("FDA") is charged

28

with overseeing the safety and effectiveness of drugs through the complex federal regulatory scheme set forth in the FDCA, the PHSA, and their implementing regulations. Plaintiffs' claims directly challenge the FDA-approved uses, labels, and monitoring schemes of defendants' prescription medications, and thus are inextricably intertwined with the comprehensive federal scheme governing prescription medications. (First Am. Compl. ¶¶ 44–57) Accordingly, plaintiffs' complaint necessarily raises federal questions that are actually disputed and substantial. Furthermore, a federal forum may entertain this dispute without disturbing any congressionally approved balance of federal and state judicial responsibilities. Indeed, because the federal government heavily regulates prescription medications through the FDA, this case is particularly appropriate for federal court jurisdiction.

11. Accordingly, removal is proper under federal law since this is a civil action brought in state court over which the federal court has original jurisdiction based on complete preemption and/or the existence of a substantial federal question. *See* 28 U.S.C. §§ 1331, 1441.

## THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

12. The prerequisites for removal under 28 U.S.C. § 1441 have been met.

13. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) in that it is being filed within thirty (30) days after service of the complaint on Defendant Abbott Laboratories. Abbott Laboratories was served on August 6, 2009.

14. All served defendants consent to the removal of this action. (*See* Ex. B)

15. Pursuant to 28 U.S.C. § 1446(d), a copy of this notice is being served on all counsel of record and the clerk of the Superior Court of the State of California, in and for the County of San Francisco. (*See* Ex. C)

16. Removal to the United States District Court for the Northern District of California is appropriate because this action is being removed from the Superior Court for the State of California, in and for the County of San Francisco, which is located within the Northern District of California.

1    17.    By removing this action to this Court, Abbott Laboratories does not waive any

2    defense available to it.

3    18.    If any question arises as to the propriety of the removal of this action, Defendant

4    Abbott Laboratories requests the opportunity to present a brief and oral argument in support of

5    its position that this case is removable.

6

7    WHEREFORE, Abbott Laboratories respectfully requests that this Notice of Removal be

8    filed; that the action in the Superior Court of the State of California, in and for the County of San

9    Francisco, be removed to this Court; and that no further proceedings be had in the Superior

10   Court.

11

12   DATED: September 4, 2009                          Respectfully submitted,

13                                                     Kirkland & Ellis LLP

14

15                                                     By:_____

16                                                        Traci L. Shafroth

17                                                        Attorney for Defendant
                                                         Abbott Laboratories
18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, Zackary M. Lyons, am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action; my business address is 555 California Street, San Francisco, California 94104-1501.

On September 4, 2009, I served a true copy of the following document(s) described as:

**1.      NOTICE OF REMOVAL**

on the interested parties in this action as follows:

[X]  **By U.S. Mail**

By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.  I am familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

| | |
|---|---|
| Fabrice Vincent | Esther E. Berezofsky |
| LIEFF, CABRASER, HEIMANN & | WILLIAMS CUKER BEREZOFSKY |
| BERNSTEIN, LLP | Woodland Falls Corporate Center |
| Embarcadero Center West | 210 Lake Drive East, Suite 101 |
| 275 Battery Street | Cherry Hill, NJ 08002 |
| San Francisco, CA 94111-33395 | |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed September 4, 2009, at San Francisco, California.

_____
Zackary M. Lyons

# UNPUBLISHED
# OPINIONS



Slip Copy
Slip Copy, 2008 WL 5411530 (N.D.Cal.)
**(Cite as: 2008 WL 5411530 (N.D.Cal.))**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff
and not assigned editorial enhancements.**

United States District Court,
N.D. California.
GEOGRAPHIC EXPEDITIONS, INC., Petitioner,
v.
The ESTATE OF Jason LHOTKA by Elena
LHOTKA, executrix; and Sandra Menefee, Respondents.
No. C 08-04624 SI.

Dec. 29, 2008.

Laurie Elizabeth Sherwood, Alex Pevzner, Walsworth, Franklin, Bevins & McCall, LLP, San Francisco, CA, Rodney E. Gould, Rubin, Hay & Gould, P.C., Framingham, MA, for Petitioner.

David J. Bennion, Law Offices of David J. Bennion, San Jose, CA, for Respondents.

**ORDER DENYING PETITION TO COMPEL
ARBITRATION AND TO STAY THE STATE
COURT ACTION**

SUSAN ILLSTON, District Judge.

*1 On December 12, 2008, the Court heard oral argument on petitioner's petition to compel arbitration and to stay the state court action. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the petition is DENIED.

**BACKGROUND**

On July 14, 2008, respondents Sandra Menefee and the estate of Jason Lhotka filed a complaint in San Francisco Superior Court alleging claims against petitioner Geographic Expeditions, Inc. ("GeoEx"). GeoEx is a California company and has its principal

place of business in San Francisco. Respondents' underlying claims in state court arise from a series of events on Mount Kilimanjaro in Tanzania, Africa in October, 2007. Respondents allege that Jason Lhotka and his mother, Sandra Menefee, bought a trekking expedition from GeoEx to climb Mount Kilimanjaro, and that Lhotka died due to deficient equipment and medical care provided by GeoEx employees. *See* First Amended Complaint, Decl. of David Bennion in Supp. of Opp. to GeoEx Application for Order Shortening Time, at ex. 1. [Docket No. 17] Before leaving for Tanzania, Lhotka and Menefee signed agreements with GeoEx that include the following provisions:

I agree that in the unlikely event a dispute of any kind arises between me and GeoEx, the following conditions will apply: (a) the dispute will be submitted to a neutral third-party mediator in San Francisco, California, with both parties splitting equally the costs of such mediator. If the dispute cannot be resolved through mediation, then (b) the dispute will be submitted for binding arbitration to the American Arbitration Association in San Francisco, California; (c) the dispute will be governed by California law; and (d) the maximum amount of recovery to which I will be entitled under any and all circumstances will be the sum of the land and air cost of my trip with GeoEx. I agree that this is a fair and reasonable limitation on the damages, of any sort whatsoever, that I may suffer.

*See* Petition of GeoEx to Compel Arbitration and Stay the State Court Action, at exs. A & B. GeoEx argues that § b of this provision mandates that the dispute between respondents and GeoEx be referred to arbitration, while respondents maintain that the arbitration cannot be compelled because the agreement is procedurally and substantively unconscionable.

On September 15, 2008, GeoEx filed a motion in San Francisco Superior Court to dismiss the complaint or to stay the action and compel arbitration. *See* GeoEx Application for Order Shortening Time, at 2. [Docket

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

No. 9] The motion was scheduled for hearing in state court on November 18, 2008. *See id.* On October 6, 2008, GeoEx filed a petition in this Court to compel arbitration and stay the state court action. [Docket No. 1] On October 13, 2008, GeoEx filed an application for an order from this Court to shorten time on GeoEx's October 6 motion, in order for the motion to be heard in this Court before the November 18, 2008 hearing in state court. [Docket No. 9] This Court denied GeoEx's motion to shorten time and calendared it for hearing on December 12, 2008. [Docket No. 16]

**\*2** At the November 18, 2008 hearing in state court on GeoEx's motion to dismiss or compel arbitration, the Hon. Judge Patrick Mahoney adopted his tentative ruling and denied GeoEx's motion. *See* Decl. of David J. Bennion in Opposition to GeoEx Mot. to Stay, ¶ 4 ("Bennion Decl."). [Docket No. 22] In his tentative ruling, Judge Mahoney found that the arbitration agreement is unconscionable and that § b cannot be stricken because unconscionability permeates the substantive terms of the parties' agreement. *See* Bennion Decl., at ex. G. [Docket No. 23]

Now before the Court is GeoEx's petition to compel arbitration and stay the state court action, pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

### DISCUSSION

GeoEx claims that this Court has diversity jurisdiction over GeoEx's petition to compel arbitration and stay the state court action.[FN1] There is no dispute that there is complete diversity of citizenship between the parties; the parties disagree as to whether the amount of controversy exceeds $75,000, as required by 28 U.S.C. § 1332(a).

> FN1. The Federal Arbitration Act creates "a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise." *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

"The general federal rule has long been to decide

what the amount in controversy is from the complaint itself." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). When it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the proponent of federal jurisdiction bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir.1996). Section 1332(a)'s amount in controversy requirement includes attorneys' fees. 28 U.S.C. § 1332(a); *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir.2007).

Respondents did not plead a specific amount of damages, so GeoEx bears the burden of establishing the amount in controversy meets the jurisdictional requirement. In deciding the question of jurisdiction, GeoEx urges the Court to consider only respondents' state-court complaint, in which respondents seek damages for the wrongful death of Lhotka, who at the time of his death was thirty-seven, married, and had a minor dependent at the time of his death. Respondents argue that the Court should also take into consideration the parties' contracts with GeoEx, which GeoEx submitted to the Court as exhibits A and B to its petition.

If the Court considers only the state-court complaint, it would appear that the amount in controversy in this wrongful death case exceeds the jurisdictional amount. If, however, the Court also considers the parties' contracts, which stipulates that the maximum recovery to which respondents are entitled is the sum of the land and air cost of their trip with GeoEx, it appears that the amount in controversy cannot exceed $16,831.[FN2] *See* Decl. of Sandra Menefee in Supp. of Resp. Opp. to GeoEx Application to Shorten Time, at ex. 1 (invoice of Menefee's payment to GeoEx of $16,831 for herself and Lhotka).

> FN2. Respondents also seek recovery of attorneys' fees, but GeoEx alleges no facts establishing why attorneys' fees in this case would exceed approximately $58,000.

**\*3** The anomaly in this case is that GeoEx argues that the parties' contract is valid and mandates arbitration, but also effectively asks the Court to ignore the provision of the same contract that limits respondents'

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 5411530 (N.D.Cal.)
**(Cite as: 2008 WL 5411530 (N.D.Cal.))**

recovery. The Court finds that GeoEx cannot both contend that the contract is valid and enforceable but is not relevant to the Court's determination as to whether it has jurisdiction. GeoEx cites no authority establishing that in a petition to compel arbitration, the Court should not consider, in addition to the complaint from the underlying dispute in state court, the materials submitted by the petitioner in support of the petition. Accordingly, the Court finds that GeoEx has not met its burden of establishing by a preponderance of the evidence that the amount of controversy in this case meets the jurisdictional threshold.[FN3]

> [FN3.] The Court recognizes, as GeoEx argues, that the FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements," *see Moses Cone Mem'l Hosp.,* 460 at 24. The parties agree, however, that the of merits GeoEx's petition-whether the arbitration clause is unconscionable-is a matter to be decided under California law. This Court certainly has no greater expertise on that issue than the state court where respondents originally filed their complaint.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court dismisses GeoEx's petition for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

N.D.Cal.,2008.
Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka
Slip Copy, 2008 WL 5411530 (N.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



**C** Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Jeanette L. CORBELLE, Plaintiff,
v.
SANYO ELECTRIC TRADING CO., LTD., Sears,
Roebuck & Co., Defendants.
No. C-03-1509 EMC.

Nov. 4, 2003.

Consumer brought action against manufacturer and retailer seeking damages on allegations that consumer was electrocuted by microwave oven. Defendant removed action to federal court on diversity grounds. On consumer's motion to remand, the District Court, Chen, United States Magistrate Judge, held that manufacturer failed to meet its burden of showing that consumer's claims to recover actual damages for personal injury more likely than not exceeded federal court's diversity jurisdiction amount of $75,000.

Motion granted.

West Headnotes

**[1] Removal of Cases 334** 107(7)

334 Removal of Cases
    334VII Remand or Dismissal of Case
        334k107 Proceedings for Remand and Review Thereof
            334k107(7) k. Evidence. Most Cited Cases
When a complaint to recover actual damages for personal injury, originally filed in a California state court, does not demand a specific dollar amount, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000. 28 U.S.C.A. § 1332; West's Ann.Cal.C.C.P. § 425.10(b).

**[2] Removal of Cases 334** 75

334 Removal of Cases
    334V Amount or Value in Controversy
        334k75 k. Allegations and Prayers in Pleadings. Most Cited Cases

**Removal of Cases 334** 107(7)

334 Removal of Cases
    334VII Remand or Dismissal of Case
        334k107 Proceedings for Remand and Review Thereof
            334k107(7) k. Evidence. Most Cited Cases
Removal cannot be based simply on a defendant's conclusory allegations where the ad damnum clause is silent.

**[3] Removal of Cases 334** 107(7)

334 Removal of Cases
    334VII Remand or Dismissal of Case
        334k107 Proceedings for Remand and Review Thereof
            334k107(7) k. Evidence. Most Cited Cases
Manufacturer, as defendant who removed case from California state court, failed to meet its burden of showing that consumer's claims to recover actual damages for personal injury more likely than not exceeded federal court's diversity jurisdiction amount of $75,000, although consumer's complaint contained allegations that she sustained serious and permanent injuries, that she incurred and would continue to incur medical expenses, and that she lost wages and would continue to lose wages; other than approxi-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22682464 (N.D.Cal.)
(Cite as: 2003 WL 22682464 (N.D.Cal.))

mately $7,000 in medical expenses and lost wages, there was no documentation or medical evidence to support her claims of injury three years after accident. 28 U.S.C.A. § 1332; West's Ann.Cal.C.C.P. § 425.10(b).

Karen Kissler, Law Offices of Karen Kissler, Larkspur, CA, for Plaintiff.

Bernard Gehlhar, Donald Paul Eichhorn, Ralph W. Robinson, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, San Francisco, CA, for Defendant.

## ORDER GRANTING PLAINTIFF'S REQUEST TO REMAND TO STATE COURT

CHEN, Magistrate J.

(Docket Nos. 8 and 29)

*1 Plaintiff Jeanette Corbelle has sued Defendant Sears, Roebuck & Co. ("Sears") for various state law claims. Ms. Corbelle initially filed suit in state court, and Sears subsequently removed the case to federal court on the basis of diversity jurisdiction. Ms. Corbelle then filed a motion with this Court asking for a remand to state court. At the hearing on Ms. Corbelle's motion to remand, the Court ordered the parties to engage in limited and reasonable discovery relevant to the amount in controversy. The parties filed cross-briefs on October 24, 2003, and a hearing on the matter was held several days later. Having considered the parties' briefs and accompanying submissions as well as the argument of counsel, and good cause appearing therefor, the Court hereby GRANTS Ms. Corbelle's request to remand to state court.

## I. FACTUAL BACKGROUND

### A. Complaint (Filed on December 16, 2002)

Ms. Corbelle's suit against Sears relates to her use of a "Sears Kenmore" microwave oven on or about August 19, 2000. According to Ms. Corbelle's complaint, filed on December 16, 2002, while she was using the microwave oven, she was suddenly and violently electrocuted. Compl. ¶ 11. As a result, she sustained "serious and permanent injuries to her health, strength and activity, severe shock to her nervous system and heart and was caused to suffer

extreme physical and mental pain." Id. ¶ 12. In addition, she incurred medical expenses and lost wages and, on information and belief, would continue to incur medical expenses and lose wages. Id. ¶¶ 13-14. In conformance with California law, no specific monetary demand was made in Ms. Corbelle's complaint.

### B. Deposition of Ms. Corbelle (Dated September 19, 2002)

Prior to the instant suit, Ms. Corbelle brought the same case in state court. It was removed to federal court and then dismissed. Pursuant to stipulation, the limitations period was tolled, permitting Ms. Corbelle to re-file the instant suit. While the first case was still in federal court, Sears subpoenaed some of Ms. Corbelle's medical records and took her deposition.

During the deposition, taken on September 19, 2002 under the auspices of the first suit, Ms. Corbelle testified that she had not been working since December 2000; that she had been earning $8 an hour when she stopped working in December 2000; that she had had and continued to have several migraines daily; that in August 2001 she experienced a sharp chest pain that required her to go to the hospital; that the doctor who examined her for the chest pain talked to her about the damage that electrical shock does to a person and told her that the electrical system in her chest was damaged; that soon after the accident she went to an eye doctor because her eyes were burning, red, and weeping, she had "floaters," and every time she blinked she saw a flash of light; that in November 2001 she saw another eye doctor because her eyesight was not doing well and she was prescribed glasses; that a nurse told her that she may have to have a C-section if she has another child to avoid the stress to her chest and heart; and that the accident has impacted her life in various ways such as limiting her driving, causing her dizziness, making her less active, causing something like a seizure, and affecting her thinking, memory, and concentration.

### C. Responses to Written Discovery (Served in October 2003)[FN1]

> FN1. In its papers, Sears argues that, because Ms. Corbelle's responses to the requests for admissions were four days late due to a mailing problem, the matters of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22682464 (N.D.Cal.)
(Cite as: 2003 WL 22682464 (N.D.Cal.))

which the admissions were requested should be deemed admitted. The Court has discretion as to whether matters should be deemed admitted pursuant to Federal Rule of Civil Procedure 36. See Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir.1995). Given that service was only four days late, that Sears does not appear to have been prejudiced in any way, and that the issue here is subject matter jurisdiction which can never be waived, the Court shall not deem any of the matters admitted. See, e.g., id. at 243 ("Because the late response was so minimal in time and work on the date for responding was slowed by the snow storm, we conclude that the district court did not abuse its discretion in refusing to consider the requests for admission as admitted."); see also Manatt v. Union Pacific Railroad Co., 122 F.3d 514, 517 (8th Cir.1997) (stating that rejecting the responding party's late answers would not subserve the presentation of the merits of the action and allowing the late answers would not prejudice the propounding party).

*2 Pursuant to the Court's order authorizing limited discovery in the instant case, Sears propounded written discovery on Ms. Corbelle, namely, requests for admission, interrogatories, and requests for production. In her responses, Ms. Corbelle stated that, as a result of the incident, she experienced migraines, dizziness, and chest pains and her level of activity had been limited. While she was concerned about seizures, vision problems, and an irregular heartbeat, she conceded, however, that no doctor had diagnosed her as having any of these ailments because of the incident. Similarly, no doctor had told her that her ability to bear children was impacted. Ms. Corbelle also conceded that she did not have any documents to support either seizures or vision problems and that, if she made any claim about the incident affecting her ability to bear children, she now withdrew it. Ms. Corbelle also stated that, after the incident, her desire and ability to drive did diminish but that, when she filed the complaint (more than two years after the incident), her desire and ability to drive "was pretty much back to normal, re-accident levels."

In her responses to the written discovery, Ms. Corbelle also made the following statements. First, she denied that, at the time of removal, her special and/or general damages exceeded $75,000. According to Ms. Corbelle, her special damages consisted of only $6,500 in medical expenses and $500 in lost wages.[FN2] She also claimed general damages for pain, suffering, and emotional distress in the amount of $50,000; however, there was no documentation of any illness other than her subjective complaints. Second, Ms. Corbelle did not have any documents to support her pain, suffering, inconvenience, emotional distress, medical expenses, and/or lost earnings except for the medical records she produced to Sears. The only witnesses to support these damages were herself and/or her former employer. Third, regarding future medical expenses, Ms. Corbelle felt she would benefit from seeing a therapist weekly for a year at a cost of $7,800. However, she had no documents to support this claim for future medical expenses and she was the only witness to support this claim. Further, she did not have any records of having received or being prescribed therapy in the three years after the incident. Ms. Corbelle also stated that the only ongoing injury, symptom, illness, or disability she suffered was injury that could be resolved in therapy and that was related to anxiety (though she had not been given any diagnosis). Fourth, regarding future earning capacity, Ms. Corbelle stated that she had no damages for any such loss, a point that her counsel reiterated on the record during the hearing on October 29. Finally, Ms. Corbelle stated that, other than the above, she was not claiming any other special or general damages as a result of the incident nor was she claiming punitive damages.

> FN2. In response to another interrogatory, Ms. Corbelle stated that her medical bills totaled approximately $6,650 and her lost wages $320 per week (based on an hourly wage of $8).

### III. DISCUSSION

In a complaint for money damages, a plaintiff often demands a judgment against the defendant for a specific dollar amount. See Singer v. State Farm Mut. Automobile Ins. Co., 116 F.3d 373, 375 (9th Cir.1997). In such a situation, when the case is based on diversity jurisdiction, a court simply reads the ad damnum clause to determine whether the matter in controversy exceeds the requisite amount, currently $75,000, exclusive of interest and costs. See id ."If

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22682464 (N.D.Cal.)
(Cite as: 2003 WL 22682464 (N.D.Cal.))

the claim was apparently made in good faith, then the sum claimed by the plaintiff controls for removal purposes unless it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed."*Id.* (internal quotation marks omitted).

**\*3** [1] There are instances, however, when a plaintiff's complaint does not state a specific dollar amount at issue because of state law. For example, California Code of Civil Procedure § 425.10(b) provides that the amount of damages shall be stated in the complaint unless the action is one to recover actual or punitive damages for personal injury or wrongful death, in which case the amount shall not be stated. See Cal.Code Civ. P. § 425.10(b). When the complaint does not demand a specific dollar amount, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See id.* at 376; *see also Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir.1996) (adopting preponderance of evidence standard). Under this burden, the defendant must establish that it is more likely than not that the amount in controversy exceeds $75,000. *See id.*

[2] The Ninth Circuit has established the following framework for determining the amount in controversy on removal. First, a "court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer,* 116 F.3d at 377. If not, then jurisdiction is indeterminate, *see Gwyn v. Wal-Mart Stores, Inc.,* 955 F.Supp. 44, 46 (M.D.N.C.1996), and the court may consider facts in the removal petition and require parties to submit summary judgment-type evidence relevant to the amount in controversy.[FN3] *See Singer,* 116 F.3d at 377.

> FN3. Removal cannot be based simply on a defendant's conclusory allegations where the ad damnum clause is silent. *See Singer,* 116 F.3d at 377; *see also Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992) (noting that defendant offered no facts to support removal).

In determining whether removal is proper, a court may consider any evidence so long as it reveals the situation that existed when the case was removed. As the Supreme Court stated in *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 293, 58 S.Ct. 586, 82 L.Ed. 845 (1938), events occurring subse-

quent to removal that reduce the amount recoverable (whether beyond the plaintiff's control or the result of her own volition) do not oust a court's jurisdiction once it has attached. *See id.* There is a difference, however, between evidence that clarifies a complaint that previously left the jurisdictional question ambiguous and evidence introduced by a plaintiff that seeks to reduce, not clarify, her demand after removal. *See Marcel v. Pool Co.,* 5 F.3d 81, 85 (5th Cir.1993); *see also Gwyn,* 955 F.Supp. at 46 ("[U]ntil jurisdiction becomes determinate, the court may consider any evidence of the amount in controversy."). In the latter instance, once jurisdiction is established by a determinate complaint (when federal jurisdiction is clear from the face of the complaint), jurisdiction cannot be divested by unilateral post-removal action taken or stipulations made by the plaintiff.

[3] In this case, the Court begins its assessment of the amount in controversy with Ms. Corbelle's complaint. The complaint, as noted above, does not demand a specific dollar amount, presumably, to comply with California Code of Civil Procedure § 425.10(b). The Court, therefore, must examine the allegations in the complaint to determine if it is facially apparent that the jurisdictional amount is in controversy. Because Ms. Corbelle's complaint contains allegations that she sustained serious and permanent injuries, that she has incurred and will continue to incur medical expenses, and that she has lost and will continue to lose wages, it is clear that the amount in controversy is not a small sum. However, the Court is not persuaded that these allegations alone establish that it is more likely than not that the amount in controversy exceeds $75,000. *Cf. King v. Wal-Mart Stores, Inc.,* 940 F.Supp. 213, 216-17 (S.D.Ind.1996) (concluding that defendant did not establish even a reasonable possibility that the amount in controversy exceeded the requisite jurisdiction amount when defendant simply relied on plaintiff's general allegations in complaint that she incurred various medical expenses, suffered injuries, and lost wages when she slipped and fell). There are no specific allegations as to the nature of the injury, treatment, diagnosis and prognosis; nor is there a clear allegation as to the magnitude of lost wages (past and future), Ms. Corbelle's ability to mitigate those losses, and so forth. This is not a case where the complaint alleges wrongful death or permanent disability or other such facts that would clearly establish an amount in controversy in excess of $75,000. The complaint is therefore indeterminate of federal jurisdiction.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22682464 (N.D.Cal.)
(Cite as: 2003 WL 22682464 (N.D.Cal.))

**\*4** The Court thus turns to other evidence probative to the amount in controversy at the time of removal. According to Ms. Corbelle, her written discovery responses show that, at the time of removal, she was claiming only $6,500 in medical expenses, $7,800 in possible future medical expenses, $500 in lost wages, nothing for loss of future earnings, and $50,000 in emotional distress. In response, Sears argues that Ms. Corbelle's discovery responses should be given little weight because, at the time they were provided (*i.e.,* after she filed her motion to remand), Ms. Corbelle had a clear motive to give responses that would support a remand. Sears contends that Ms. Corbelle's complaint and deposition testimony, both of which preceded the removal, provide a more accurate assessment of the amount in controversy. According to Sears, the complaint and deposition testimony demonstrate that the amount in controversy likely exceeds $75,000 and Ms. Corbelle's more recent discovery responses are simply an attempt to backtrack from what she had earlier pled or testified about.

There is some persuasiveness to Sears's argument. Ms. Corbelle's pre-removal complaint, for example, included a prayer for loss of future earnings but, in her post-removal written discovery responses, she disavowed that she was seeking any such damages. There is some evidence, therefore, that Ms. Corbelle may be "backtracking." However, the Court concludes that notwithstanding this point, Defendant has not proven jurisdiction.

First, under *Sanchez,* it is Sears's burden to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Sanchez, 102 F.3d at 404.* The defendant must show not merely the possibility but that it "is more likely than not" that the amount in controversy exceeds $75,000. Second, in assessing whether Sears has met that burden, the Court must assess the overall quality of the evidence. Here, there is little or no objective evidence that Ms. Corbelle's claims are worth even $65,000, as Ms. Corbelle has claimed in her written discovery responses. For the three years since the incident, Ms. Corbelle has not been able to produce any documents or other hard evidence supporting her damages claims except for a handful of medical records. Other than the approximately $7,000 in medical expenses and lost wages, Ms. Corbelle concedes there is no documentation or medical evidence to support her

claims of injury three years after the accident; her primary evidence is her own subjective descriptions. It appears that, at best, there is a claim of $15,000 in special damages (half of which is undocumented). Given the lack of objective evidence, the Court concludes that Sears has failed to meet its burden in showing that Ms. Corbelle's claims more likely than not exceed $75,000.

The Court's conclusion that Sears has failed to carry its burden of proof is substantiated by the fact that defendant has had two opportunities to conduct limited discovery into Mr. Corbelle's claims, once in the first suit during which Ms. Corbelle's deposition was taken and some of her medical records subpoenaed; second, during the instant case. Other than Ms. Corbelle's unsubstantiated deposition testimony, Sears has not produced any records or other evidence of serious injury or significant damages.

### IV. *CONCLUSION*

**\*5** For the foregoing reasons, the Court grants Ms. Corbelle's request to remand to state court.

IT IS SO ORDERED.

N.D.Cal.,2003.
Corbelle v. Sanyo Elec. Trading Co., Ltd.
Not Reported in F.Supp.2d, 2003 WL 22682464 (N.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 707291 (E.D.Cal.)
**(Cite as: 2006 WL 707291 (E.D.Cal.))**

Page 1

**C**Only the Westlaw citation is currently available.

United States District Court,
E.D. California.
Nicole CAMPBELL and Patrice Green, Plaintiff(s),
v.
BRIDGSTONE/FIRESTONE, INC., et al., Defendant(s).
**No. CIVF051499FVSDLB.**

March 17, 2006.

Steven Wilfred O'Reilly, Law Offices of Steven W.
O'Reilly, Marina Del Rey, CA, for Plaintiff(s).

Alexander L. Conti, Brendan M. Ford, Robert Joseph
Gibson, Snell and Wilmer LLP, Costa Mesa, CA,
Arnold D. Larson, Mary Patricia Lightfoot, Iverson
Yoakum Papiano and Hatch, Los Angeles, CA, for
Defendant(s).

ORDER DENYING PLAINTIFF'S MOTION FOR
REMAND

BECK, Magistrate J.

**\*1** On January 7, 2006, plaintiffs, filed the present
Motion to Remand. The motion was heard on March
10, 2006 before the undersigned. Steven O'Reilly
appeared for plaintiffs, Brendan M. Ford appeared for
defendant Ford Motor Company and Mary P.
Lightfoot appeared for defendant Bridgestone Firestone North American Tire.

*BACKGROUND*

Nicole Campbell and Patrice Green ("plaintiffs")
filed the instant products liability action on September 19, 2005 in the Kern County Superior Court
against Bridgestone/Firestone, Inc., et al. ("defen-

dants") alleging numerous claims for relief arising
out of a single vehicle rollover accident involving a
2001 Ford Explorer equipped with Firestone tires.

On November 22, 2005, defendant Ford Motor Company ("Ford") removed the case to this Court on diversity grounds.<u>FN1</u>In the present motion, plaintiff
seeks an order remanding this action to the Kern
County Superior Court on the ground that defendants
have not proven facts by a preponderance that the
amount in controversy as to each plaintiff's claim is
in excess of $75,000.00 and therefore diversity does
not exist and the District Court is without jurisdiction.

> FN1. On December 6, 2005 Bridgestone/Firestone filed a Notice of a Related
> case and the MDL Panel issued a Conditional Transfer Order on January 4, 2006.
> The parties are currently awaiting notice regarding the transfer.

On February 20, 2006, Ford filed an opposition to
plaintiffs' motion arguing that the amount in controversy is facially apparent from the complaint, the
underlying facts support removal and plaintiffs' counsel has made statements that confirm the case is in
the proper jurisdiction. On February 21, 2006, defendant Bridgestone filed a joinder in Ford's opposition.

*DISCUSSION*

28 U.S.C. Section 1332(a) provides for federal jurisdiction based on diversity of citizenship:

(a) The district courts shall have original jurisdiction
of all civil actions where the matter in controversy
exceeds the sum or value of $75,000, exclusive of
interest and costs, and is between-

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 707291 (E.D.Cal.)
(Cite as: 2006 WL 707291 (E.D.Cal.))

foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

28. U.S.C. § 1332(a).

A civil action originally filed in a State court which could have been commenced in federal court based on diversity jurisdiction may be removed from state court to U.S. District Court on this ground. 28 U.S.C. § 1441(b).

The amount in controversy for jurisdictional purposes is determined by the amount of damages or the value of the property that is the subject of the action. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347-348, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The United States Supreme Court has held that "(w)here both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount" for diversity jurisdiction. *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.,* 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943).

*2 Where a state court complaint is silent as to the amount of damages sought by plaintiff, defendant must allege and bears the burden of proof by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992).

In determining whether the amount in controversy is proper for diversity jurisdiction, the Ninth Circuit has "... endorsed the Fifth Circuit's practice of considering facts presented in the removal petition as well as any 'summary-judgement-type evidence relevant to the amount in controversy at the time of removal.'" *Matheson v. Progressive Specialty Ins. Co.* 319 F.3d 1089, 1090 (9th Cir.2003); citing *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir.1997) (quoting *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335-36 (9th Cir.1995)).

In cases involving multiple plaintiffs, the removing defendant need only show that one of the plaintiffs has an amount in controversy greater than $75,000.00. *Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, ----, 125 S.Ct. 2611, 2615, 162 L.Ed.2d 502 (2005)[where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount in controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount.]

Here, there is no dispute that complete diversity of citizenship exists between plaintiffs and defendants. However, as stated above, in addition to diversity of citizenship, it must be ascertainable at the time of removal that the amount in controversy exceeds $75,000.00. Plaintiff argues defendants have failed to carry their burden to show damages exceeding $75,000.00 and therefore this action should be remanded to state court.

In support of removal jurisdiction, defendants point to the complaint which states that this action is "an unlimited case" (exceeds $25,000); plaintiffs are asserting strict products liability, negligence, and breach of warranty claims against both Ford and Firestone; and the complaint seeks compensatory damages for wage loss, loss of use of property, hospital and medical expenses, general damage, property damage and lose of earning capacity. Defendants argue the asserted damages make it facially apparent that the amount in controversy exceeds $75,000.00. Defendants also point to the Traffic Collision Report ("TCR") in which the investigating officer marked "severe injury" for both plaintiffs. The TCR goes on to describe Green's injuries as "head trauma, broken right arm, broken wrist, deep laceration to lower left leg."Ms. Green was transported by air to Kern Medical Center and she was unable to provide a statement. The TCR states that Cambpell suffered a "complaint of pain in chest, back, possible fractured collarbone and both arms possibly broken."Defendants therefore argue that in addition to the facially apparent damage assertions, the underlying facts make it more likely

Not Reported in F.Supp.2d                                                                                                                                     Page 3
Not Reported in F.Supp.2d, 2006 WL 707291 (E.D.Cal.)
**(Cite as: 2006 WL 707291 (E.D.Cal.))**

than not that the amount in controversy is greater than $75,000.

**\*3** Plaintiffs have provided no contrary evidence in support of their motion to remand. Accordingly, the Court finds that defendants have met their burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.00 for purposes of diversity jurisdiction.

Additionally, plaintiff concedes that the jurisdictional amount is met as to plaintiff Green. Consequently, the Court may exercise supplemental jurisdiction over Campbell's claims pursuant to *Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, ----, 125 S.Ct. 2611, 2615, 162 L.Ed.2d 502 (2005). Federal Court's having original jurisdiction in a civil action can exercise "supplemental jurisdiction" over other claims so related to the original claim as to be part of the same constitutional case or controversy. *See* 28 U.S.C. § 1367(a). In *Exxon Mobil Corp. v. Allapattah Servs.,* 125 S.Ct. at 2614, the Supreme Court held that § 1367 permits the exercise of diversity jurisdiction over additional plaintiffs who fail to satisfy the minimum amount in controversy requirement, as long as other elements of diversity jurisdiction are present and at least one named plaintiff satisfies the amount in controversy requirement. The Court stated:

When a well-pleaded complaint has at least one claim satisfying the amount-in-controversy requirement, and there are no other relevant jurisdictional defects, the district court, beyond all question, has original jurisdiction over that claim. A court with original jurisdiction over a single claim in the complaint has original jurisdiction over a "civil action" under *§ 1367(a),* even if that action comprises fewer claims than were included in the complaint. Once a court has original jurisdiction over the action, it can then decide whether it has a constitutional and statutory basis for exercising supplemental jurisdiction over other claims in the action ... The Court cannot accept the alternative view, or its supporting theories, that a district court lacks original jurisdiction over a civil action unless it has original jurisdiction over every claim in the complaint.

Pursuant to *Exxon,* this Court has original jurisdiction over this civil action and therefore it was properly removed pursuant to 28 U.S.C. § 1441.

Having read and considered the pleadings submitted in support of the present motion and having considered the arguments made at the hearing, the court finds that defendants have satisfied their burden of proving the requisite amount in controversy. Therefore, plaintiff's motion to remand removed action is HEREBY DENIED.

IT IS SO ORDERED.

E.D.Cal.,2006.
Campbell v. Bridgestone/Firestone, Inc.
Not Reported in F.Supp.2d, 2006 WL 707291 (E.D.Cal.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.