**United States District Court**
For the Northern District of California

1

2

3                    IN THE UNITED STATES DISTRICT COURT

4              FOR THE NORTHERN DISTRICT OF CALIFORNIA

5
                                        No. C 09-04124 CW
6  STEPHEN WENDELL AND LISA WENDELL, for
   themselves and as successors in       ORDER GRANTING IN
7  interest to MAXX WENDELL, deceased,    PART AND DENYING IN
                                          PART ABBOTT
8            Plaintiffs,                   LABORATORIES' MOTION
                                          TO DISMISS
9      v.

10 JOHNSON & JOHNSON, et al.,

11           Defendants.
                                                   /
12

13     This is a products liability action concerning three

14 prescription drugs, Remicade, Humira and Purinethol.  Defendant

15 Abbott Laboratories (Abbott Labs), the manufacturer of Humira,

16 moves to dismiss all claims alleged against it.  Plaintiffs oppose

17 the motion.  The matter was taken under submission on the papers.

18 Having considered all of the parties' papers, the Court grants

19 Abbott Labs' motion in part and denies it in part .

20                          BACKGROUND[1]

21     Plaintiffs allege that Defendants' products, used either alone

22 or in combination, resulted in Maxx Wendell's development of

23 hepatosplenic T-Cell lymphoma in 2007.  Plaintiffs' claims against

24 Abbott Labs concern the company's failure to warn adequately of

25 lymphoma risks associated with an off-label use of Humira.

26     In 1998, at the age of twelve, Maxx Wendell was diagnosed with

27

28     [1]The following facts are alleged in the complaint.

**United States District Court**
For the Northern District of California

1  inflammatory bowel disease and ulcerative colitis.  Initially he

2  was treated with a course of mercaptopurine (6-MP) and prednisone,

3  a steroid.  Compl. ¶ 59.  Mercaptopurine, also sold under the brand

4  name Purinethol,[2] is a "purine analog which interfered with nucleic

5  acid biosynthesis and has been found to be active against human

6  leukemias."  Id. at ¶ 55.  The only FDA-approved use of

7  mercaptopurine is for the "remission induction and maintenance

8  therapy of acute lymphatic leukemia."  Id.

9       In May, 2002, Wendell's physicians recommended adding Remicade

10 to his treatment regimen[3] with a course of steroid weaning.  In

11 June or July, 2002, Wendell received his first dose of Remicade.

12 Remicade is a TNF-∝ inhibitor, which is designed to suppress the

13 immune system in ways that can reduce the symptoms of autoimmune

14 disorders, such as Crohn's disease and rheumatoid arthritis.  Id.

15 at ¶ 44.  In November, 2006, Wendell's doctors replaced his intake

16 of Remicade with Humira.  Humira is also a TNF-∝ inhibitor with

17 anti-inflammatory effects that provides relief for many symptoms

18 affecting rheumatoid arthritis.  Id. at ¶ 50.  Humira is designed

19 and manufactured by Abbott Labs.  Id.  at ¶ 21.  He received at

20 least five doses of Humira between November, 2006 and June, 2007.

21 Id. at ¶ 63.

22      In July, 2007, doctors diagnosed Wendell with hepatosplenic T-

23 cell lymphoma.  Id. at ¶ 64.  Despite aggressive chemotherapy and

24 other treatments, Wendell died on December 19, 2007.  Id. at ¶ 65.

25

26      [2]Purinethol is manufactured by Defendants Smithkline Beecham, Teva Pharmaceuticals USA and Gate Pharmaceuticals.  Compl. ¶¶ 22-24.

27

28      [3]Remicade is manufactured by Defendants Johnson & Johnson and Centocor, Inc.  Compl. ¶ 19.

1    Plaintiffs allege that, following FDA approval of "Remicade in

2  1998 for treatment of rheumatoid arthritis and Crohn's disease in

3  adults, it became common practice to prescribe mercaptopurine in

4  combination concomitantly with TNF-blockers like Remicade or Humira

5  in the treatment of autoimmune disorders."  Id. at ¶ 57.

6  Plaintiffs allege that such use, "which was not approved by the FDA

7  -- was not only known to Defendants herein but encouraged and/or

8  promoted and/or fostered and/or otherwise enabled by Defendants

9  herein and each of them without adequate testing on the safety

10  and/or efficacy of such combination use or in the pediatric or

11  young adult populations."  Id.

12    Plaintiffs assert ten causes of action against all Defendants:

13  (1) fraud and deceit, (2) negligence, recklessness and gross

14  negligence, (3) negligent misrepresentation, (4) negligence,

15  (5) negligence per se, (6) strict liability, (7) breach of express

16  warranty, (8) breach of implied warranty, (9) violation of Business

17  and Professions Code Section 17200, et seq. and (10) wrongful

18  death.  Plaintiffs filed the complaint on June 2, 2009 in the

19  Superior Court of California for San Francisco County.  Plaintiffs

20  served Abbott Labs on August 6, 2009 and on September 4, 2009,

21  Abbott Labs removed the case to federal court.  Plaintiffs have not

22  challenged the removal.  On September 27, 2009, Abbott Labs filed

23  the instant motion to dismiss.

24                          LEGAL STANDARD

25    A complaint must contain a "short and plain statement of the

26  claim showing that the pleader is entitled to relief."  Fed. R.

27  Civ. P. 8(a).  When considering a motion to dismiss under Rule

28  12(b)(6) for failure to state a claim, dismissal is appropriate

                                  3

**United States District Court**
For the Northern District of California

1  only when the complaint does not give the defendant fair notice of

2  a legally cognizable claim and the grounds on which it rests.  Bell

3  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In

4  considering whether the complaint is sufficient to state a claim,

5  the court will take all material allegations as true and construe

6  them in the light most favorable to the plaintiff.  NL Indus., Inc.

7  v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this

8  principle is inapplicable to legal conclusions; "threadbare

9  recitals of the elements of a cause of action, supported by mere

10 conclusory statements," are not taken as true.  Ashcroft v. Iqbal,

11 129 S.Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

12     When granting a motion to dismiss, the court is generally

13 required to grant the plaintiff leave to amend, even if no request

14 to amend the pleading was made, unless amendment would be futile.

15 Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911

16 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment

17 would be futile, the court examines whether the complaint could be

18 amended to cure the defect requiring dismissal "without

19 contradicting any of the allegations of [the] original complaint."

20 Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

21 Leave to amend should be liberally granted, but an amended

22 complaint cannot allege facts inconsistent with the challenged

23 pleading.  Id. at 296-97.

24                            DISCUSSION

25 I.   Pleading Standards

26     The parties disagree as to whether federal or state procedural

27 law applies to this motion.  Plaintiffs argue that, because the

28 complaint was filed in state court, California's pleading rules

4

**United States District Court**
For the Northern District of California

1 govern.  This is not correct.

2     A Rule 12(b)(6) motion considers the substantive sufficiency

3 of the pleadings as if the action had never been in state court.

4 See <u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto</u>

5 <u>Truck Drivers, Local No. 70 of Alameda County</u>, 415 U.S. 423, 437

6 (1974) ("[O]nce a case has been removed to federal court, it is

7 settled that federal rather than state law governs the future

8 course of proceedings, notwithstanding state court orders issued

9 prior to removal.").  Further, Federal Rule of Civil Procedure

10 81(c) provides, "These rules apply to a civil action after it is

11 removed from state court."  This action has now been removed;

12 therefore, federal law, not state law, governs the specificity that

13 Plaintiffs must plead in order to survive a 12(b)(6) motion.  <u>Lopez</u>

14 <u>v. GMAC Mortgage Corp.</u>, No. C 07-3911 CW, 2007 WL 3232448 at *4

15 (N.D. Cal.) ("In a case removed to federal court, the pleading

16 requirements for a claim of fraud are analyzed under Federal Rule

17 of Civil Procedure's 9(b).").

18 I.   Off-Label Use of Humira Allegations

19     Abbott Labs argues that all causes of action against it should

20 be dismissed because Plaintiffs did not allege that it promoted

21 off-label use of Humera.  Although the adequacy of Plaintiffs'

22 allegations will be discussed below, the Court concludes that

23 Plaintiffs have, at least in a general fashion, alleged that Abbott

24 Labs promoted the off-label use of Humera.  For instance, paragraph

25 fifty-seven of Plaintiffs' complaint alleges that Humira's use in

26 combination with Remicade and mercaptopurine in the treatment of

27 autoimmune disorders, which "was not approved by the FDA," was

28

5

**United States District Court**
For the Northern District of California

1  known to and promoted by Defendants.[4]  Compl. ¶ 57.  Therefore,

2  this argument of Abbott Labs fails.

3  II.   Learned Intermediary Doctrine

4       Abbott Labs also argues that all claims against it should be

5  dismissed under the "learned intermediary" doctrine because "the

6  FDA-approved labels for Humira specifically warned against the harm

7  alleged here: the risk of lymphoma, particularly when Humira is

8  used concomitantly with other immunosuppressive drugs."  Motion at

9  12.  The learned intermediary doctrine provides that a drug

10  manufacturer's duty to warn "runs to the physician, not to the

11  patient."  <u>Carlin v. Superior Court</u>, 13 Cal. 4th 1104, 1116 (1996).

12  However, this rule does not absolve manufacturers of a duty to

13  provide physicians with adequate warnings about drugs such that

14  physicians can adequately inform their patients.  <u>Id.</u> at 1108.

15  Although Abbott Labs claims that its warnings were adequate, the

16  Court cannot make such a determination in this case on a motion to

17  dismiss.  Plaintiffs do not disagree that Abbott Labs provided a

18  warning to physicians, but they dispute whether the warning

19  adequately conveyed to physicians the known or knowable risks of

20  Humira.  At the pleading stage, Abbott Labs has not proved that the

21  "learned intermediary" doctrine bars all of Plaintiffs' claims.

22  Thus, the Court denies Abbott Labs' motion to dismiss Plaintiffs'

23  complaint based on this defense.

24  III. Fraud, Negligent Misrepresentation and Business and
         Professions Code Section 17200

25

26       Plaintiffs' first, third and ninth causes of action are for

---

27       [4]Of course if it were later to appear that Plaintiffs had no
    good faith reason to believe that Abbott Labs promoted the off-
28  label use of Humira, Rule 11 sanctions would apply.

**United States District Court**
For the Northern District of California

1  fraud, negligent misrepresentation and violation of Business and

2  Professions Code Section 17200 respectively.  Because these causes

3  of action are all grounded in allegations of fraud, the Court will

4  discuss them together.

5      Under California law, "[t]he elements of fraud, which gives

6  rise to the tort action for deceit, are (a) misrepresentation

7  (false representation, concealment, or nondisclosure);

8  (b) knowledge of falsity (or 'scienter'); (c) intent to defraud,

9  i.e., to induce reliance; (d) justifiable reliance; and

10 (e) resulting damage." Small v. Fritz Cos., Inc., 30 Cal. 4th 167,

11 173 (2003) (quoting Lazar v. Superior Court, 12 Cal. 4th 631, 638

12 (1996)).  A claim for negligent misrepresentation does not require

13 scienter or intent to defraud; rather, to establish fraud through

14 non-disclosure or concealment of facts, it is necessary to show

15 that the defendant "was under a legal duty to disclose them."

16 Lingsch v. Savage, 213 Cal. App. 2d 729, 735 (1963); Buckland v.

17 Threshold Enterprises, Ltd., 155 Cal. App. 4th 798 (2007).[5]

18     "In all averments of fraud or mistake, the circumstances

19 constituting fraud or mistake shall be stated with particularity."

20 Fed. R. Civ. Proc. 9(b).  The allegations must be "specific enough

21 to give defendants notice of the particular misconduct which is

22 alleged to constitute the fraud charged so that they can defend

23 against the charge and not just deny that they have done anything

24

25     [5]Most district courts within California have held that a
    negligent misrepresentation claim is subject to the heightened
    pleading requirements of Rule 9(b). Deitz v. Comcast Corp., 2006
26 WL 3782902 (N.D. Cal.); Neilson v. Union Bank of California, N.A.,
    290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (stating that the
27 elements of a cause of action for negligent misrepresentation are
    the same as those of a claim for fraud, with the exception that the
28 defendant need not actually know the representation is false).

**United States District Court**
For the Northern District of California

1  wrong."   Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

2  Statements of the time, place and nature of the alleged fraudulent

3  activities are sufficient, id. at 735, provided the plaintiff sets

4  forth "what is false or misleading about a statement, and why it is

5  false."   In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th

6  Cir. 1994).   Scienter may be averred generally, simply by saying

7  that it existed.   Id. at 1547; see Fed. R. Civ. Proc. 9(b)

8  ("Malice, intent, knowledge, and other condition of mind of a

9  person may be averred generally").   Allegations of fraud based on

10  information and belief usually do not satisfy the particularity

11  requirements of Rule 9(b); however, as to matters peculiarly within

12  the opposing party's knowledge, allegations based on information

13  and belief may satisfy Rule 9(b) if they also state the facts upon

14  which the belief is founded.   Wool v. Tandem Computers, Inc., 818

15  F.2d 1433, 1439 (9th Cir. 1987).

16       Here, Plaintiffs' fraud claims do not meet Rule 9(b)'s

17  requirements.   Plaintiffs have not identified which Defendant is

18  alleged to have made the misrepresentations or omissions, let alone

19  the specific persons who made the fraudulent statements.   Swartz v.

20  KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not

21  allow a complaint to merely lump multiple defendants together but

22  requires plaintiffs to differentiate their allegations when suing

23  more than one defendant . . . and inform each defendant separately

24  of the allegations surrounding his alleged participation in

25  fraud.") (internal quotations, brackets, and citation omitted).

26       Further, Plaintiffs have not plead facts describing what is

27  false or misleading about any of Abbott Lab's statements.

28  Plaintiffs generally allege that Defendants' "representations

**United States District Court**
For the Northern District of California

1 | regarding the safety and efficacy of their drug products when used
2 | either singly or in combination were in fact false and inaccurate"
3 | because "the use of their products either singly or in combination
4 | . . . was directly associated with and/or known to cause cancers,
5 | including and particularly hepatosplenic T-cell lymphoma."  Compl.
6 | ¶ 73.  Allegations such as these do not explain how any statement
7 | or omission was false.  Therefore, the Court grants Abbott Labs'
8 | motion to dismiss these causes of action.

9 | IV.  Negligence, Strict Liability and Wrongful Death

10 |     Plaintiffs' claims for negligence, negligence per se, strict
11 | liability and wrongful death also fail to state a claim.[6]  Although
12 | not governed by the same heightened pleading standards as fraud
13 | claims, these allegations fail to specify any tortious conduct by
14 | Abbott Labs.  Plaintiffs simply recite the elements of each cause
15 | of action and repeat the same failure-to-warn allegations.
16 | Plaintiffs fail to allege how Abbott Labs' warnings about Humira
17 | were inadequate, how it was negligent in failing to satisfy any
18 | other duty of care alleged or how it violated any specific
19 | California consumer protection law that would serve as the basis of
20 | Plaintiffs' negligence per se claim.  Plaintiffs' "[t]hreadbare
21 | recitals of the elements of a cause of action, supported by mere
22 | conclusory statements," are insufficient to state a claim.  Iqbal,
23 | 129 S. Ct. at 1949-50.

24 |     Further, Plaintiffs' opposition does not even address these
25 | causes of action, choosing instead to rely on the argument that
26 | Abbott Labs failed to "challenge the sufficiency of the pleadings

27 |

28 |     [6]These claims comprise counts two, four, five, six and ten.

9

**United States District Court**
For the Northern District of California

1  under California law." Opposition at 27. As noted above, federal

2  pleading standards control this motion and Plaintiffs' failure to

3  respond to Abbott Labs' arguments regarding these causes of action

4  leaves the Court with little option but to grant Abbott Labs'

5  motion on these claims.

6  V.    Breach of Express and Implied Warranties

7      Plaintiffs' seventh and eighth causes of action are for breach

8  of express and implied warranty respectively. Abbott Labs argues

9  that these claims fail because it is not in privity with

10  Plaintiffs. However, California recognizes an exception to the

11  privity requirement in breach of warranty claims pertaining to food

12  or drug products. Gottsdanker v. Cutter Labs., 182 Cal. App. 2d

13  602 (1960). Abbott Labs asks the Court to ignore the rule in

14  Gottsdanker because it has not been addressed by the California

15  Supreme Court. The Court will not do so. Abbott Labs has not

16  presented any California authority to suggest that this rule is no

17  longer valid or that the California Supreme Court would rule as

18  such.

19      However, for a different reason, the Court dismisses

20  Plaintiffs' warranty claims. Simply stated, Plaintiffs'

21  allegations fail to state a claim under Rule 8(a). Plaintiffs

22  merely allege that Defendants expressly and impliedly "warranted"

23  that the products were "safe, effective, fit and proper for their

24  intended use," and that the products "were not safe and were unfit"

25  for their intended uses." Compl. ¶¶ 120-21, 124, 126. Plaintiffs

26  have not alleged the contents of any specific warranty or the

27  breach thereof. Plaintiffs must allege more than just the elements

28  of a warranty cause of action to survive a motion to dismiss.

**United States District Court**
For the Northern District of California

CONCLUSION

1

2     For the foregoing reasons, the Court grants Abbott Labs'

3  motion to dismiss.  Docket No. 39.  Plaintiffs may amend their

4  complaint to cure the deficiencies outlined above.  Plaintiffs may

5  file an amended complaint within twenty-one days from the date of

6  this order.  If Plaintiffs do so, Abbott Labs may file a motion to

7  dismiss three weeks thereafter, with Plaintiffs' opposition due two

8  weeks following and Abbott Labs' reply due one week after that.

9  Abbott Labs' motion, if one is filed, shall be taken under

10  submission on the papers.  Defendants who have already answered

11  need not file another answer.  A case management conference shall

12  be held on April 20, 2010 at 2:00 p.m.

13     IT IS SO ORDERED.

14  Dated: 01/20/10

15                                        CLAUDIA WILKEN
                                         United States District Judge

11