UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

<span style="color:red">*ORIGINAL*</span>

BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

| | | |
|---|---|---|
| STEPHEN WENDELL AND LISA | ) | |
| WENDELL, FOR THEMSELVES AND | ) | |
| AS SUCCESSORS IN INTEREST | ) | |
| TO MAXX WENDELL, DECEASED, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | NO. C 09-04124 CW |
| | ) | |
| JOHNSON & JOHNSON; CENTOCOR, | ) | |
| INC., ABBOTT LABORATORIES; | ) | PAGES 1 - 29 |
| SMITHKLINE BEECHAM D/B/A | ) | |
| GLAXOSMITHKLINE; TEVA | ) | |
| PHARMACEUTICALS USA; GATE | ) | |
| PHARMACEUTICALS, A DIVISION | ) | |
| OF TEVA PHARMACEUTICALS USA; | ) | |
| PAR PHARMACEUTICALS, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | OAKLAND, CALIFORNIA |
| _____ | ) | THURSDAY, SEPTEMBER 5, 2013 |

### TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS            WILLIAMS CUKER BEREZOVSKY
(TELEPHONICALLY):         WOODLAND FALLS CORPORATE PARK
                          210 LAKE DRIVE EAST, SUITE 201
                          CHERRY HILL, NEW JERSEY  08002
                  BY:  KEVIN HAVERTY, ATTORNEY AT LAW


(APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:        RAYNEE H. MERCADO, CSR NO. 8258


PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
~~TRANSCRIPT PRODUCED BY COMPUTER AIDED TRANSCRIPTION.~~

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

### <u>A P P E A R A N C E S</u> (CONT'D.)


```
FOR DEFENDANTS CENTOCOR  DRINKER BIDDLE & REATH LLP
AND JOHNSON & JOHNSON:   50 FREMONT STREET, 20TH FLOOR
                         SAN FRANCISCO, CALIFORNIA  94105
                 BY:  MICHELLE A. CHILDERS,
                      AMY P. FRENZEN, ATTORNEYS AT LAW


FOR DEFENDANT            KIRKLAND & ELLIS LLP
ABBOTT LABORATORIES:     555 CALIFORNIA STREET, 27TH FLOOR
                         SAN FRANCISCO, CALIFORNIA  94104
                 BY:  TRACI L. SHAFROTH, ATTORNEY AT LAW


(TELEPHONICALLY)         KIRKLAND & ELLIS LLP
                         300 NORTH LASALLE STREET
                         CHICAGO, ILLINOIS  60654
                 BY:  MICHAEL P. FORADAS, ATTORNEY AT LAW



FOR DEFENDANT TEVA       HASSARD BONNINGTON, LLP
PHARMACEUTICALS USA:     TWO EMBARCADERO CENTER, SUITE 180
                         SAN FRANCISCO, CALIFORNIA  94111-3941
                 BY:  THOMAS M. FRIEDER, ATTORNEY AT LAW


(TELEPHONICALLY)         ULMER & BERNE LLP
                         600 VINE STREET, SUITE 2800
                         CINCINNATI, OHIO  45202-2409
                 BY:  PRENTISS W. HALLENBECK, JR.
                          ATTORNEY AT LAW
```




--OOO--

```
1    THURSDAY, SEPTEMBER 5, 2013                    2:05 P.M.

2                     P R O C E E D I N G S

3         THE CLERK:  WE'RE CALLING C09-4124, WENDELL, ET AL.

4    VERSUS JOHNSON & JOHNSON, ET AL.

5      PLEASE STEP FORWARD AND STATE YOUR APPEARANCES FOR THE

6    RECORD AND AS WELL AS THE APPEARANCES ON THE LINE.  THANK YOU.

7                  (PAUSE IN THE PROCEEDINGS.)

8         MS. CHILDERS:  MICHELLE CHILDERS FOR THE CENTOCOR

9    DEFENDANTS AND J & J.

10        MS. FRENZEN:  AMY FRENZEN FOR THE CENTOCOR DEFENDANTS

11   AND J & J.

12        MS. SHAFROTH:  TRACI SHAFROTH FOR ABBOTT

13   LABORATORIES.

14        MR. FRIEDER:  GOOD AFTERNOON, YOUR HONOR.  TOM

15   FRIEDER FOR DEFENDANT TEVA PHARMACEUTICALS.

16        MR. HAVERTY:  GOOD AFTERNOON, YOUR HONOR.  KEVIN

17   HAVERTY, WILLIAMS CUKER BEREZOVSKY FOR THE PLAINTIFFS.

18        MR. FORADAS:  GOOD AFTERNOON, YOUR HONOR.  MICHAEL

19   FORADAS ALSO ON BEHALF OF ABBOTT.

20        MR. HALLENBECK:  GOOD AFTERNOON, YOUR HONOR.

21   PRENTISS HALLENBECK ALSO ON BEHALF OF TEVA PHARMACEUTICAL

22   U.S.A.

23        THE COURT:  IS THAT IT?

24      SO WE'RE ON FOR A FURTHER CASE MANAGEMENT CONFERENCE.

25   THIS CASE HAS KIND OF GOTTEN OFF TRACK HERE.  THERE WERE SOME
```

1   MOTIONS -- OR THEY WEREN'T MOTIONS.  THEY WERE CASE MANAGEMENT

2   CONFERENCES FILED LAST SUMMER, BUT THEY WEREN'T STYLED AS

3   MOTIONS OR REQUESTS FOR ANYTHING, SO NOTHING WAS DONE WITH

4   THEM.  AND THEY WERE, IN FACT, DISGUISED REQUESTS FOR PUTTING

5   OVER DATES, AND THOSE DATES WERE NOT PUT OVER.  AND THEY

6   HAVEN'T YET BEEN PUT OVER.  MAYBE YOU THOUGHT THEY WERE.

7   OR -- I DON'T KNOW.

8        BUT I'M CONCERNED ABOUT THIS CASE BECAUSE IT'S A, WHAT?

9   IT'S AN '09 CASE.  IT'S BEEN SET FOR TRIAL IN JANUARY FOR

10  QUITE A LONG TIME NOW.  I'VE -- AS IT HAPPENS HAVE NO OTHER

11  TRIALS DOUBLE OR TRIPLE SET WITH IT IN JANUARY.  I'VE GOT

12  THREE WEEKS TO TRY IT IN JANUARY.

13       YOU'RE TALKING ABOUT PUTTING IT OVER TILL JUNE, AND I'M

14  TRIPLE SET IN JUNE.  SO IF I WERE TO PUT IT OVER, I'D HAVE TO

15  PUT IT OVER MUCH LONGER THAN JUNE, WHICH I'D REALLY RATHER NOT

16  DO.

17       TODAY WAS THE DAY FOR HEARING CASE DISPOSITIVE MOTIONS.

18  NONE WERE FILED.  I GUESS MAYBE YOU THOUGHT YOU'D BE GETTING A

19  CONTINUANCE.  AND MAYBE YOU HAD IN MIND TO FILE SOME.  THERE

20  IS A PENDING MOTION TO RECONSIDER THE SUMMARY JUDGMENT FOR

21  GSK.  AND IF I WERE TO GRANT THAT, THEN GSK UNDOUBTEDLY WOULD

22  COME BACK AND SAY, YOU KNOW, WE CAN'T GO TO TRIAL IN JANUARY

23  AND THEY'D BE RIGHT, SO I PROBABLY WOULD HAVE TO PUT IT OVER,

24  BUT I HAVE TO SAY I'M NOT REALLY INCLINED TO GRANT THAT.  I

25  DON'T ANTICIPATE GRANTING THAT, SO I'M JUST CONCERNED ABOUT

1   PUTTING THIS OVER FOR SO LONG OR PUTTING IT OVER AT ALL,

2   FRANKLY.

3            **MR. HAVERTYF:**  YOUR HONOR, THIS IS KEVIN HAVERTY.

4      AS YOU MAY RECALL, WE HAD SOME ISSUES THAT WERE REFERRED

5   TO THE MAGISTRATE FOR MANAGEMENT --

6            **THE COURT:**  WELL, SO YOU SAID.

7            **MR. HAVERTY:**  -- BACK IN THE --

8            **THE COURT:**  RIGHT.  EXACTLY.  BUT YOU SAID THAT SHE

9   DIDN'T RULE ON SOMETHING BY MARCH 5TH, BUT IT WAS -- MARCH 5TH

10  WAS THE TIME YOU FILED IT.  I DON'T KNOW.  YOU DID HAVE SOME

11  ARGUMENT ABOUT THE MAGISTRATE JUDGE, BUT IT DIDN'T SEEM TO ME

12  TO BE WELL TAKEN.

13           **MR. HAVERTY:**  WELL --

14           **THE COURT:**  YOU SAY THAT THE DEADLINE FOR PLAINTIFFS

15  TO SUBMIT EXPERT REPORTS WAS MARCH 5TH AND HAD ALREADY PASSED

16  BY THE TIME JUDGE CORLEY'S APRIL 22ND ORDER WAS ENTERED.

17  HOWEVER, YOU DIDN'T ASK TO MODIFY THE SCHEDULE UNTIL MARCH

18  5TH, SO IT WASN'T REALLY THAT SHE DELAYED THE RULING.  IT WAS

19  THAT THE DATE HAD ALREADY COME AND GONE BY THE TIME YOU EVEN

20  ASKED TO PUT IT OVER.  SO YES, SHE DIDN'T RULE ON IT BY MARCH

21  5TH, BUT YOU DIDN'T ASK FOR IT BEFORE THEN EITHER.

22           **MR. HAVERTY:**  IF YOUR HONOR RECALLS -- MAY RECALL, IT

23  WAS --

24           **THE COURT:**  WHO'S SPEAKING?  WHO'S SPEAKING?

25           **MR. HAVERTY:**  I'M SORRY.  THIS IS KEVIN HAVERTY.

1    WE WERE -- WE WERE IN A DISPUTE OVER THE SCOPE OF

2    DISCOVERY WITH TEVA, WHICH WAS ULTIMATELY REFERRED BY THIS

3    COURT TO THE MAGISTRATE.  SHE HELD A HEARING I BELIEVE ON

4    MARCH 7TH.  SHE HAD A CONFERENCE WITH US.  AND -- TO SEE IF WE

5    CAN HAMMER OUT THE SCOPE OF DISCOVERY AMONG OURSELVES.

6    WE ENDED UP HAVING ARGUMENT WITH THE -- THE MAGISTRATE.

7    AND THEN SHE ORDERED A BRIEFING SCHEDULE ON THE ISSUE ABOUT

8    THE SCOPE OF DISCOVERY, HOW FAR IT SHOULD EXTEND.

9    THAT EXTENDED INTO I DON'T -- AS I SIT HERE TODAY, I DON'T

10   RECALL, BUT IT'S PROBABLY WELL INTO APRIL.  AND THEN THE

11   MAGISTRATE DECIDED WHAT THE SCOPE OF DISCOVERY SHOULD BE IN

12   THAT.

13   ALL -- AT THE SAME TIME, WE WERE ALSO ENGAGED IN DISCOVERY

14   WITH THE OTHER DEFENDANTS, AND IT ENDED UP PUSHING ALL THE WAY

15   INTO JUNE BECAUSE OF SCHEDULING ISSUES IN TERMS OF THE

16   WITNESSES, AT WHICH POINT WE FINALLY COMPLETED FACTUAL

17   DISCOVERY.

18   NOW, PLAINTIFFS HAVE SUBMITTED THEIR EXPERT REPORTS AT

19   THIS POINT IN THE GAME.  AND I KNOW THAT THE DEFENDANTS ARE

20   PROPOSING TO SUBMIT THEIR EXPERT REPORTS IN THE NEXT COUPLE OF

21   WEEKS.  SO IF WE DID GET OFF TRACK, WE -- I WOULD SUBMIT TO

22   THE COURT THAT WE'RE BACK ON TRACK NOW, EVEN THOUGH THE

23   JANUARY TRIAL DATE SEEMS A BIT UNREALISTIC BUT NOT NECESSARILY

24   IMPOSSIBLE.

25   **THE COURT:**  DID THE DEFENDANTS HAVE IN MIND TO FILE

1   SUMMARY JUDGMENT MOTIONS?

2          **MS. CHILDERS:**  YES, YOUR HONOR.  YOUR HONOR, FIRST OF

3   ALL, TO THE EXTENT THAT WE MISUNDERSTOOD THE COURT ON BEHALF

4   OF DEFENDANTS, I APOLOGIZE.  I -- I DON'T THINK ANY PARTY FELT

5   THAT THEY -- DIDN'T UNDERSTAND THAT THEY WERE DOING ANYTHING

6   THAT WAS INCONSISTENT WITH THE ORDERS THAT WE RECEIVED.

7       WE HAD A SCHEDULING ORDER FROM YOU, AND THEN AFTER THAT,

8   FACT DISCOVERY WAS ORDERED.  IT WAS SIX DEPOSITIONS.  AND WE

9   SUBMIT -- SUBMITTED ANOTHER PROPOSED SCHEDULE THAT WOULD

10  ADJUST FACT DISCOVERY TO ALLOW THE SIX DEPOSITIONS -- EXCUSE

11  ME.  I GOT SOMETHING IN MY THROAT HERE.  BUT -- AND THEN AFTER

12  THAT, WE JUST SHIFTED THE DATES JUST PRECISELY TO -- TO MEET

13  WHAT YOU HAD ORDERED.

14         **THE COURT:**  WELL, YOU PROPOSED SHIFTING THEM.

15         **MS. CHILDERS:**  WE -- WE PROPOSED SHIFTING THEM.  YOUR

16  HONOR, YOU KNOW, WE -- AGAIN, WE APOLOGIZE IF IT WASN'T

17  FASHIONED IN SUCH A WAY THAT IT WAS HEARD BY THE COURT.  BUT

18  WE SUBMITTED SOMETHING IN ORDER TO PROPOSE SHIFTING THE DATES

19  BECAUSE BY THE TIME WE HAD LEARNED THAT THE DISCOVERY HAD BEEN

20  ORDERED, THE FACT DISCOVERY HAD BEEN ORDERED, THE DEADLINES --

21  WE HAD ALREADY BEEN IN A POSITION WHERE WE COULDN'T FINISH

22  THAT DISCOVERY BEFORE EXPERT DISCLOSURES WOULD BE DUE, AND

23  PLAINTIFF TOOK THE POSITION THAT THEY COULDN'T PRODUCE THEIR

24  EXPERT REPORTS UNTIL THAT FACT DISCOVERY WAS COMPLETED.  AND

25  WE DID COMPLETE IT QUICKLY.

1      I BELIEVE IT WAS ORDERED IN APRIL 2013 AND COMPLETED IN

2   2000 -- 2013, SO JUNE 27TH, 2013, EXCUSE ME.

3      SO -- SO, YOU KNOW, AGAIN, WE APOLOGIZE TO THE EXTENT THAT

4   WE WERE MISUNDERSTANDING THE ORDERS HERE.  BUT IT WAS REALLY

5   OUR IMPRESSION THAT BECAUSE THE MAGISTRATE HAD ORDERED FACT

6   DISCOVERY, THAT FACT DISCOVERY WOULD STILL NEED TO BE OPEN AT

7   THAT TIME.

8      AND WE SUBMITTED SOMETHING TO THE COURT FOR CONSIDERATION

9   TO ALLOW THE COURT TO KEEP ITS ORIGINAL SCHEDULING IN PLACE

10   BUT ALLOW THAT FACT DISCOVERY THAT HAD BEEN COURT ORDERED.

11           **THE COURT:**  OH, WELL, BUT WHAT --

12           **MR. HAVERTY:**  AND, YOUR HONOR --

13           **THE COURT:**  -- DOESN'T KEEP THE ORIGINAL SCHEDULE IN

14   PLACE.  IT HAS THE TRIAL -- HAS THE SUMMARY JUDGMENT MOTIONS

15   CONTINUED FROM TODAY UNTIL FEBRUARY.  AND THE TRIAL CONTINUED

16   FROM JANUARY TILL THE FOLLOWING JUNE.

17           **MS. CHILDERS:**  YOU'RE RIGHT, YOUR HONOR.  I DIDN'T

18   STATE THAT IN THE WAY I SHOULD HAVE.  WHAT I MEANT TO SAY WAS

19   THAT THE PACING THAT THE COURT HAD ORDERED, WE KEPT THAT

20   PACE --

21           **THE COURT:**  OH.

22           **MS. CHILDERS:**  -- THE PRECISE PACE THAT YOU HAD

23   ORDERED, AND JUST MOVED THE FACT DISCOVERY TO ALLOW JUST A FEW

24   MONTHS TO COMPLETE THAT FACT DISCOVERY THAT HAD BEEN ORDERED

25   BY THE MAGISTRATE AND THEN WE SUBMITTED A PROPOSED ORDER TO

1   THE COURT ALLOWING US A FACT DISCOVERY CUTOFF.  WE -- ONLY

2   ALLOWED US A SHORT AMOUNT OF TIME TO CONDUCT THOSE SIX

3   DEPOSITIONS.  AND WHEN THOSE SIX DEPOSITIONS WERE COMPLETED --

4   WE DID SUBMIT IT AS SOON AS WE COULD REACH AGREEMENT WITH THE

5   PARTIES.  WE SUBMITTED IT RIGHT AWAY.  I KNOW IT DIDN'T END UP

6   ON YOUR DESK, BUT, YOU KNOW, WE -- I BELIEVE ALL THE PARTIES

7   DID THEIR BEST TO DO WHAT THEY FELT THE COURT WOULD -- WANTED

8   US TO DO AT ALL TIMES.

9          **THE COURT:**  HMM.

10         **MR. HAVERTY:**  AND, YOUR HONOR, THIS IS KEVIN HAVERTY

11  AGAIN.  I WOULD JUST POINT OUT THAT ONE OF THE PROBLEMS THAT

12  WE HAD WITH DISCOVERY WAS THROUGH NO FAULT OF THE PARTY, A

13  NUMBER OF THESE WITNESSES WERE -- WERE NO LONGER EMPLOYED BY

14  THE DEFENDANTS AND THEY HAD MOVED OUT OF THE STATE, AND YOU

15  KNOW, THERE WAS A POINT WHERE I HAD TO GO DOWN TO

16  NORTH CAROLINA FOR DEPOSITIONS AND OTHER PLACES.  SO IT WASN'T

17  LIKE WE WEREN'T DILIGENT IN CONDUCTING THE DISCOVERY.  THERE

18  WERE JUST SOME -- SOME IMPEDIMENTS.  THAT'S -- AND THAT'S HOW

19  WE KIND OF SLIPPED OFF THE RAILS.

20         **MS. CHILDERS:**  AND DESPITE ALL OF THOSE IMPEDIMENTS,

21  I MEAN, WE DID FINISH THE FACT DISCOVERY ORDERED BY THE

22  MAGISTRATE WITHIN A FEW SHORT MONTHS OF IT BEING ORDERED, SO,

23  YOU KNOW, WHEN WE -- WHEN WE GOT THAT ORDER, IT INVOLVED SIX

24  PLAINTIFFS -- I MEAN, SIX DEPOSITIONS, YOUR HONOR.  EXCUSE ME,

25  YOUR HONOR.

```
 1        SO SIX DEPOSITIONS AND WE WERE ABLE TO IDENTIFY THE

 2   WITNESSES, TRAVEL TO GET TO THEM, AND DO IT VERY, VERY QUICKLY

 3   AND AS SOON AS WE WERE ABLE TO GET THAT DONE, WE GOT TOGETHER

 4   AGREED ON AN ORDER THAT WOULD KEEP THE PACING THAT THE COURT

 5   HAD PREVIOUSLY ORDERED, SUBMITTED IT TO THE COURT.  AND --

 6        THE COURT:  WELL, THAT WAS THE TROUBLE.  IF IT HAD

 7   BEEN SUBMITTED AS A PROPOSED ORDER -- I WOULD --

 8                  (SIMULTANEOUS COLLOQUY.)

 9        THE COURT:  -- REJECTED IT.  IT WAS SUBMITTED AS A

10   CASE MANAGEMENT STATEMENT, WHICH UNFORTUNATELY, I DON'T KNOW

11   EXACTLY WHETHER WE HAD THE CASE MANAGEMENT CONFERENCE OR WHAT,

12   BUT IT DIDN'T PRESENT ITSELF AS A REQUEST TO CHANGE DATES.

13   AND A RESULT -- AS A RESULT, THE DATES NEVER WERE CHANGED, AND

14   ALTHOUGH YOU MIGHT ALL AGREE ON HOW THEY SHOULD BE CHANGED,

15   THEY HAVEN'T BEEN.

16        MS. CHILDERS:  ABSOLUTELY, YOUR HONOR.  WE APOLOGIZE.

17    IT -- IT APPEARS THAT IT NEVER MADE IT TO THE COURT'S

18   DESK, AND WE APOLOGIZE.  IT LOOKS LIKE THAT WAS, YOU KNOW, THE

19   FAULT OF THE PARTIES IN THE WAY THEY SUBMITTED IT TO THE

20   COURT, AND WE VERY MUCH APOLOGIZE FOR THAT.

21        THE COURT:  WELL, I JUST DON'T KNOW WHAT TO DO WITH

22   IT.  I HATE TO PUT OVER A 2009 CASE -- AS I SAY, I COULDN'T

23   TRY IT IN JUNE IF I WANTED TO.  I'D BE LOOKING AT MAYBE NEXT

24   FALL, SOMETHING LIKE THAT, AND I -- I REALLY WOULD NOT RATHER

25   NOT PUT IT OFF THAT LONG.
```

1      **MS. CHILDERS:**  THE PACE THAT WE HAVE NOW --

2      **THE COURT:**  CAN YOU TRY IT IN JANUARY?  I HAVE THOSE

3  DATES?

4      **MS. CHILDERS:**  YOU KNOW, I DON'T THINK THAT THE CASE

5  CAN BE TRIED IN JANUARY.  I THINK THE PACE THAT WAS ORIGINALLY

6  ORDERED IS A -- IS A REASONABLE BUT AGGRESSIVE PACE AND THAT

7  THE PARTIES ARE DEFINITELY ON PACE.  I KNOW WE HAVE HAD SOME

8  COMMUNICATIONS WITH PLAINTIFF'S COUNSEL REGARDING THE

9  AVAILABILITY OF THEIR EXPERTS TO PRODUCE, AND THEY'RE NOT

10 GOING TO BE ABLE TO PRODUCE THOSE EXPERTS RIGHT AWAY.

11     THE DEFENDANTS ARE IN THE PROCESS OF VERY SOON SERVING

12 THEIR EXPERT REPORTS ON PLAINTIFFS, BUT EVERY -- EVERYTHING'S

13 ON TRACK.  IT'S JUST NOT TRENDING TOWARDS A JANUARY TRIAL

14 DATE.  IT'S TRENDING TOWARDS A JUNE TRIAL DATE, WHICH I

15 UNDERSTAND WILL NOT WORK FOR THE COURT IN ANY WAY.

16     BUT I -- I DO KNOW THAT, YOU KNOW, WE WOULD BE AVAILABLE

17 AFTER JUNE.  I DO THINK THE DEFENDANTS WOULD BE AVAILABLE

18 AFTER JUNE, AND WE CAN CERTAINLY KEEP THE CASE ON PACE AND

19 READY TO GO IF YOUR HONOR IS WILLING TO ADOPT THE ORDER THAT

20 WE THOUGHT WOULD BE THE ORDER THE JUDGE WOULD WANT US TO

21 SUBMIT.

22     **THE COURT:**  HMM.

23     **MR. HAVERTY:**  AND, YOUR HONOR, THIS IS KEVIN HAVERTY

24 AGAIN.  AS THE COURT MAY RECALL, THERE WERE A NUMBER OF

25 DETOURS IN THIS CASE, WHICH, YOU KNOW, ACCOUNT FOR THE SEEMING

1  AGE OF IT.  I WOULD JUST SUBMIT -- I THINK MS. CHILDERS AND

2  EVERYBODY ELSE WOULD AGREE WITH ME THAT WE HAVE VERY MUCH

3  RIGHTED THE SHIP AND, YOU KNOW, WE'RE MOVING ALONG APACE.

4          **THE COURT:**  WELL, ONE REASON TO HAVE A FIRM TRIAL

5  DATE IS TO SEE IF THE CASE IS GOING TO SETTLE OR ISN'T GOING

6  TO SETTLE.

7      WHAT EFFORTS ARE YOU MAKING TO TRY TO SETTLE THE CASE?

8          **MS. CHILDERS:**  AS STATED IN OUR CMC STATEMENT, WE DID

9  HEAD TO MEDIATION AND HAD DISCUSSIONS AND EVEN DISCUSSIONS

10  AFTER MEDIATION TO TRY TO GET IT RESOLVED.  IT -- IT IS

11  LOOKING RIGHT NOW THAT WE HAVE NOT BEEN ABLE TO GET ANYWHERE

12  ON SETTLEMENT.  IT MAY OR MAY NOT SETTLE.  THIS MAY BE A CASE

13  THAT WILL NEED A TRIAL IN ORDER TO RESOLVE.

14      BUT AS WE SIT HERE TODAY, THERE'S NO FURTHER PLANS FOR

15  MEDIATION.  IF --

16          **MR. HAVERTY:**  AND THAT MEDIATION, YOUR HONOR, TOOK

17  PLACE -- THIS IS KEVIN HAVERTY AGAIN.  THAT MEDIATION TOOK

18  PLACE BEFORE ANY REAL DISCOVERY WAS TAKEN.  NOW WE'VE

19  COMPLETED DISCOVERY.  PLAINTIFFS HAVE SUBMITTED THEIR EXPERT

20  REPORTS, AND DEFENSE EXPERT REPORTS ARE DUE SHORTLY, SO I

21  CAN'T IMAGINE IF POSTURES WOULDN'T HAVE CHANGED SOMEWHAT BASED

22  UPON THAT.

23          **THE COURT:**  WELL, I CAN'T FIND IT IN YOUR STATEMENT.

24  WHO DID YOU TRY TO MEDIATE WITH AND WHEN?

25          **MS. CHILDERS:**  THE MEDIATOR'S NAME --

```
 1              MR. HAVERTYF:  JUDGE WESTER --

 2                      (SIMULTANEOUS COLLOQUY.)

 3          MS. CHILDERS:  WESTERFIELD.

 4          MR. HAVERTY:  WESTERFIELD.

 5          MS. CHILDERS:  AND THAT WAS IN OCTOBER.

 6          THE COURT:  OF WHAT YEAR?

 7          MS. CHILDERS:  OCTOBER 17, 2012 WAS THE MEDIATION

 8   DATE.  THERE HAD BEEN SOME DISCUSSIONS AFTER THAT TIME.  BUT

 9   OCTOBER 17TH, 2012, WAS THE MEDIATION DATE.

10          MR. FORADAS:  YOUR HONOR, IT'S MICHAEL FORADAS FOR

11   ABBOTT.  I MIGHT JUST ADD ONE OTHER PIECE OF INFORMATION ON

12   THE SETTLEMENT FRONT, AND THAT IS SUBSEQUENT TO THAT

13   MEDIATION, WE HAD CONVERSATIONS WITH PLAINTIFFS' COUNSEL ABOUT

14   THE POSSIBILITY OF A SETTLEMENT INVOLVING ABBOTT.  THEY

15   EXPRESSED AN INTEREST IN RESOLVING ALL DEFENDANTS' CLAIMS AT

16   THE SAME TIME SO THAT HASN'T GONE ANYWHERE.  BUT WE DIDN'T SIT

17   DEAD IN THE WATER AFTER THE MEDIATION FAILED FROM OUR

18   PERSPECTIVE.

19              THE COURT:  HMM.

20       WELL, WHAT ABOUT THE LENGTH OF THE TRIAL?  ARE YOU STILL

21   THINKING YOU NEED A 15-DAY TRIAL?

22          MS. CHILDERS:  TRYING TO THINK IF ANYTHING HAS

23   CHANGED FROM THE TIME THAT -- I THINK THAT THAT'S A FAIR

24   ESTIMATE.  IT MAY BE GIVE OR TAKE A FEW DAYS, BUT I THINK

25   THAT'S A FAIR ESTIMATE FROM OUR PERSPECTIVE.
```

1          **THE COURT:**  HOW LONG IS THE PLAINTIFF'S CASE-IN-CHIEF

2     INCLUDING CROSS?

3          **MR. HAVERTY:**  YOUR HONOR, I WOULD SAY -- I HAVE THREE

4     EXPERTS, AND I IMAGINE A COUPLE OF THE TREATING PHYSICIANS

5     WOULD BE CALLED.  I PROBABLY COULD FINISH MY CASE -- ALWAYS

6     ASSUMING THAT THE ISSUE IS SCHEDULING EXPERTS, I PROBABLY

7     COULD DO IT IN FIVE DAYS.

8          **THE COURT:**  WELL, YOU HAVE THREE EXPERTS ON THREE

9     DIFFERENT SUBJECTS?

10          **MR. HAVERTY:**  YES, YOUR HONOR.  I HAVE ONE ON -- ON

11     LIABILITY, YOU KNOW, NEGLIGENCE.  ONE ON CAUSATION, AND ONE ON

12     PATHOLOGY CAUSATION.

13          **MS. CHILDERS:**  THAT IS A HEAVY EXPERT CASE.  THE BULK

14     OF THE CASE WILL BE --

15          **THE COURT:**  I'M SURE IT IS, BUT I DON'T LIKE TO HAVE

16     MORE THAN ONE EXPERT PER PARTY ON ANY PARTICULAR SUBJECT, SO I

17     WOULD LIKE YOU TO --

18          **MR. HAVERTY:**  YEAH, THEY DON'T OVERLAP, YOUR HONOR.

19          **THE COURT:**  -- NARROW THAT DOWN.  AND I DON'T KNOW IF

20     YOU'RE STILL -- IF YOU'RE TAKING A STANCE FOR THE PLAINTIFF

21     THAT YOU WON'T SETTLE WITH ONE OR ANOTHER DEFENDANT

22     INDIVIDUALLY.  YOU MIGHT KIND OF RETHINK THAT DEPEND -- AND

23     PARTICULARLY IF IT WOULD TAKE LONGER IF --

24          **MR. HAVERTY:**  I -- YOU KNOW, I DON'T WANT TO -- I

25     OBVIOUSLY DON'T WANT TO REVEAL TOO MUCH, YOUR HONOR, BUT I

```
1    THINK IN LIGHT OF THE EXPERT OPINIONS THAT I SUBMITTED, THAT

2    MAY BE MORE DIFFICULT BECAUSE THE -- THE EXPERT ON LIABILITY

3    CLEARLY LAYS OUT A CASE AGAINST EACH OF THESE DEFENDANTS

4    INDIVIDUALLY, WHAT THEIR PARTICULAR ROLE WAS, AND THEY'RE KIND

5    OF INTERTWINED.  SO IT MAY BE DIFFICULT TO SETTLE OUT WITH ONE

6    AS OPPOSED TO SETTLING GLOBALLY.

7        BUT, AGAIN, YOUR HONOR, I JUST -- I JUST SUBMITTED THESE

8    REPORTS.  I DON'T KNOW WHETHER THE DEFENDANTS HAVE HAD THE

9    OPPORTUNITY TO REALLY POUR OVER THEM.  I ASSUME THEY HAVE.

10   AND I JUST DON'T KNOW WHETHER POSITIONS MIGHT SHIFT A LITTLE

11   BIT BASED UPON THE SUBMISSIONS OF EXPERT TESTIMONY BY NOW.

12       WHEN WE LAST MET AND WE DISCUSSED THIS, WE REALLY HAD

13   NO -- NO DISCOVERY.  AND SINCE THEN, WE'VE TAKEN EXTENSIVE

14   DISCOVERY WHICH HAS REVEALED A LOT OF THINGS THAT WE HAD NO

15   IDEA EXISTS -- OR AT LEAST I DIDN'T HAVE ANY IDEA EXISTED

16   BEFORE THE DISCOVERY WAS DONE, SO WE'RE IN A DIFFERENT

17   POSITION.

18           MS. CHILDERS:  AND, YOUR HONOR, ON THE DEFENDANT'S

19   SIDE, WE HAVE ABOUT TEN EXPERTS TOTAL.  THERE HAVE BEEN

20   SEVERAL CONFERENCE CALLS DURING WHICH WE HAVE TRIED TO

21   STREAMLINE THE NUMBER OF EXPERTS AS MUCH AS POSSIBLE.  SO WE

22   HAVE CAREFULLY REVIEWED THE ISSUES.  WE MAY BE ABLE TO NARROW

23   THAT BIT FURTHER, BUT RIGHT NOW, WHERE WE LAND IS ABOUT TEN

24   EXPERTS ON THE DEFENSE SIDE.

25           THE COURT:  WELL, THAT'S AN AWFUL LOT.  HOW MANY
```

1   DEFENDANTS HAVE YOU GOT?

2          **MS. CHILDERS:**  WELL, IT'S THREE.

3          **THE COURT:**  NOT COUNTING GSK ASSUMING THEY DON'T COME

4   BACK IN.   TEVA -- YOU'VE GOT A WHOLE BUNCH OF TEVA PEOPLE.

5          **MS. CHILDERS:**  WE HAVE TEVA PEOPLE --

6          **THE COURT:**  THAT'S JUST ONE DEFENDANT.

7          **MS. CHILDERS:**  IT'S JUST ONE DEFENDANT.   THREE

8   DIFFERENT -- THREE DIFFERENT GROUPS, YOUR HONOR, SO YOU'LL

9   HAVE, YOU KNOW, THE ABBOTT GROUP, THE CENTOCOR GROUP, AND THE

10  TEVA GROUP, AND BETWEEN THEM, THERE'S SOME SHARING THERE.   OR

11  AT LEAST, YOU KNOW, SOME AREAS IN WHICH ONLY ONE PARTY WILL

12  HAVE AN EXPERT IN THAT AREA, BUT THERE'S DIFFERENT -- THERE'S

13  DISCRETE REGULATORY ISSUES FOR EACH OF THE DEFENDANTS, SO EACH

14  DEFENDANT WILL NEED THEIR OWN REGULATORY EXPERT TO UNDERSTAND

15  THEIR REGULATORY STORY AND BE ABLE TO EXPLAIN THAT TO THE

16  JURY.

17      AND I DON'T THINK THERE'S ANY OVERLAP IN SUBJECT MATTER,

18  EVEN THOUGH THE REGULATORY EXPERT GENERALLY -- BUT ON

19  DIFFERENT SUBJECTS, DIFFERENT PRODUCTS, DIFFERENT TIME LINES,

20  VERY LITTLE OVERLAP.   HAVING ONE EXPERT IN THAT AREA WOULD NOT

21  SAVE ANY RESOURCES.   IT WOULD JUST --

22          **THE COURT:**  WELL, I THINK IT WOULD.   IT WOULD SAVE

23  SCHEDULING PROBLEMS BECAUSE YOU WOULDN'T HAVE TO BE TRYING TO

24  JUGGLE ALL DIFFERENT PEOPLE.   IT WOULD SAVE TRAVEL EXPENSES.

25  WOULD SAVE SOME TIME AND THE BACKGROUND AND EXPERTISE OF THE

1   WITNESS.

2       IT WOULD BE EASIER FOR THE JURY TO UNDERSTAND, I THINK, IF

3   IT COULD SEE THERE'S ALL OF THESE REGULATIONS AND, TRUE, THESE

4   APPLY TO THIS DEFENDANT AND THESE APPLY TO THAT DEFENDANT, BUT

5   IT'S PART OF THE SAME REGULATORY SCHEME AND INVOLVES THE SAME

6   AGENCIES.  I THINK THERE'D BE A LOT OF BENEFIT TO --

7           **MS. CHILDERS:**  YEAH, I THINK --

8           **THE COURT:**  -- CONSOLIDATING EXPERTS AS MUCH AS

9   POSSIBLE.

10          **MS. CHILDERS:**  I THINK --

11          **THE COURT:**  SO I'LL JUST SAY THAT I -- I WILL BE

12  LOOKING CLOSELY AT -- I'LL BE TRYING TO THINK OF THE

13  DEFENDANTS AS ONE ENTITY AND STARTING WITH THE DEFAULT OF ONE

14  EXPERT PER SUBJECT FOR ALL THE DEFENDANTS, AND THEN YOU WOULD

15  NEED TO CONVINCE ME THAT, OH, NO, WE REALLY NEED TWO EXPERTS

16  ON ONE SUBJECT FOR THESE TWO DEFENDANTS BECAUSE THEY HAVE SOME

17  SORT OF CONFLICT.

18      AND IF YOU DO FIND -- BUT IF IT'S JUST A QUESTION OF I

19  LIKE MY GUY BETTER THAN THE OTHER PERSON'S GUY, THEN THAT IS

20  NOT GOING TO BE LOOKED AT WITH SO MUCH FAVOR.  AND I DON'T

21  WANT TO HAVE TO TRY A 15-DAY CASE.  IT'S HARD TO GET A JURY TO

22  SIT AROUND FOR 15 DAYS, EVEN FIND PEOPLE WHO CAN DO IT, MUCH

23  LESS RETAIN THEIR ATTENTION FOR THAT LENGTH OF TIME.

24      AND IT'S HARDER FOR ME TO SCHEDULE.  SO IF YOU REALLY

25  THINK YOU NEED A 15-DAY TRIAL, I'M GOING TO NEED TO SEE WHY.

1    **MS. CHILDERS:**  OKAY.  YOUR HONOR, WE WILL DEFINITELY

2    TAKE THOSE COMMENTS INTO CONSIDERATION AND, YOU KNOW, ADDRESS

3    THAT FURTHER AS NEEDED.

4        YOU KNOW, I WILL MENTION THAT THE -- THE PRODUCTS ARE

5    SEPARATE AND THE -- THE TIME FRAMES DURING WHICH THE PRODUCTS

6    WERE TAKEN ARE SEPARATE.  AND THE LABELING HISTORIES ARE

7    SEPARATE AS WELL.  BUT WE CERTAINLY WILL BE PREPARED TO

8    ADDRESS ANY CONCERNS THAT THE CLIENT -- I -- THAT THE COURT

9    HAS ON THAT SUBJECT.

10        **THE COURT:**  ALL RIGHT.  WELL, ANOTHER QUESTION I HAVE

11    IS THAT YOU SAY DEFENDANT TEVA MAY FILE A SHORT LIMITED

12    DISPOSITIVE MOTION EARLY, AND THAT, I WOULD NOT FAVOR EITHER.

13        I THINK I'D RATHER HAVE ALL THE MOTIONS EARLY, AND I'D --

14    I USUALLY DON'T LIKE TO HAVE THEM AT TWO SEPARATE TIMES

15    BECAUSE THEN I HAVE TO GEAR UP ABOUT THE CASE TWICE AND READ

16    ALL ABOUT IT TWICE.  SO I'M NOT INCLINED TO DO THAT.  BUT I

17    WOULD BE HAPPY TO --

18        **MR. HALLENBECK:**  YOUR HONOR --

19        **THE COURT:**  -- ALL OF THEM EARLY.

20        **MR. HOLLENBECK:**  THIS IS PRENTISS HALLENBECK FOR TEVA

21    PHARMACEUTICALS U.S.A.

22        THE REASON FOR THAT EARLY -- AT THE CONFERENCE IN AUGUST

23    2012 THAT YOU HAD ALLOWED AN EARLY SHORT DISPOSITIVE MOTION ON

24    THE BEHALF OF TEVA AND PAR AT THE TIME, WHICH IS NOW OUT OF

25    THE CASE, IS BECAUSE THE ARGUMENT FOR TEVA IS IN LINE WITH THE

1    ARGUMENT FOR GSK.  AND TEVA WAS NOT ALLOWED TO FILE A -- ITS

2    SUMMARY JUDGMENT MOTION UNTIL DISCOVERY AGAINST IT HAD BEEN

3    COMPLETED PURSUANT TO THE COURT'S GUIDANCE.

4        AND BY THE TIME THAT DISCOVERY WAS COMPLETED, PLAINTIFFS

5    HAD FILED A MOTION FOR RECONSIDERATION OF THE GSK SUMMARY

6    JUDGMENT MOTION.  AND THE COURT HAD EXPRESSED A -- A DESIRE

7    NOT TO HAVE CONFLICTING DETERMINATIONS ON THE SAME TOPIC OR

8    ISSUE.

9        AND THEREFORE, TEVA HAS NOT FILED ANYTHING WAITING FOR THE

10   COURT'S DETERMINATION AS TO GSK SO THAT THERE WOULD NOT BE TWO

11   FILINGS THAT ACTUALLY HAD THE SAME ISSUE BEING DISCUSSED

12   AND -- AND BRIEFED.

13           **MR. HAVERTY:**  AND, YOUR HONOR, THIS IS KEVIN HAVERTY,

14   THAT RAISES A SIGNIFICANT POINT THAT BEARS ON THE -- THE

15   MOTION FOR RECONSIDERATION AS TO JSK (PHONETIC), AND I

16   UNDERSTAND THAT THE COURT HAS INDICATED ITS INCLINATION TO

17   DENY THAT MOTION.  BUT THAT WAS THE PURPOSE FOR ME FILING

18   THAT -- THIS MOST RECENT MOTION TO SUPPLEMENT THAT WITH THE

19   REPORT OF MY REGULATORY EXPERT, WHO BASICALLY SAYS THAT THE

20   SIGNAL THAT -- THE REASON THAT GSK GOT OUT OF THE CASE WAS

21   BECAUSE THEY SAID THERE WAS NO WAY THAT THEY COULD HAVE KNOWN

22   ABOUT THE SAFETY SIGNAL RELATED TO HFCCL (PHONETIC) BEFORE

23   THEY TRANSFERRED THE NDA TO TEVA.

24       AND MY -- MY REGULATORY EXPERT BASICALLY LAYS -- PUTS THE

25   LIE TO THAT AND SAYS THAT THE SAFETY SIGNAL COULD HAVE BEEN

1    DETECTED IN 2002 AND CERTAINLY IN EARLY 2003 BEFORE GSK

2    TRANSFERRED THE -- THE -- THE PRODUCT OVER TO TEVA.

3        AND MORE IMPORTANTLY THAN THAT IS A SIGNIFICANT ISSUE OF

4    THE FACT THAT WHEN TEVA TOOK THE NDA OVER FROM GSK, THERE WAS

5    NO MIGRATION OF GSK'S SAFETY PROFILE FOR THE DRUG OVER TO

6    TEVA.  THEY STARTED -- THEY STARTED WITH A CLEAN SLATE ON --

7    ON SAFETY ISSUES.  SO WHATEVER POSSIBLE SIGNAL COULD HAVE BEEN

8    DETECTED BY GSK WAS THEN LOST TO THE TEVA --

9        SO THEY'RE STILL -- THEY'RE STILL INTIMATELY TIED

10   TOGETHER.  AND WHAT WE'VE DONE IS WE'VE -- MY EXPERT HAS

11   PUSHED BACK THE TIME WHEN THE SIGNAL COULD HAVE BEEN DETECTED

12   TO AS EARLY AS 2002 AND CERTAINLY EARLY 2003, A TIME WHEN GSK

13   COULD HAVE STILL -- STILL HAD THE PRODUCT.  AND THAT WAS THE

14   BASIS FOR THE MOST RECENT FILING OF SUPPLEMENTAL MOTION TO

15   FILE THAT REPORT AS PART OF THE AUTHORITY FOR MOTION FOR

16   RECONSIDERATION.

17             **THE COURT:**  YOU WEREN'T THE ORIGINAL ATTORNEY --

18             **MR. HALLENBECK:**  AND, YOUR HONOR --

19             **THE COURT:**  EXCUSE ME.  YOU WEREN'T THE ORIGINAL

20   ATTORNEY FOR THE PLAINTIFF, RIGHT?

21             **MR. HAVERTY:**  THAT'S -- NO, THAT'S NOT TRUE.  I'VE

22   BEEN THE ORIGINAL ATTORNEY SINCE THE BEGINNING.

23             **THE COURT:**  OH.  AND WHO'S YOUR LOCAL COUNSEL?

24             **MR. HAVERTY:**  IT'S LIEF CABRASER.  FABRICE VINCENT.

25             **THE COURT:**  I'M SORRY.

1    **MR. HAVERTY:** FABRICE VINCENT AT LIEF CABRASER IN

2    SAN FRANCISCO.

3    **THE COURT:** WELL, I GUESS WHAT I'D LIKE TO DO IS

4    TIGHTEN UP YOUR PROPOSED SCHEDULE AS MUCH AS POSSIBLE, WHICH

5    MAY SEEM ANOMALOUS SINCE I CAN'T TRY IT AS EARLY AS YOU WERE

6    THINKING PROBABLY, BUT AT LEAST IF WE COULD GET IT --

7    EVERYTHING READY FOR TRIAL, AND THEN IF WE HAVE TO HAVE A

8    DELAY, YOU KNOW, MAYBE I CAN MOVE IT UP EARLIER -- OR AT LEAST

9    YOU'LL BE DONE AND WE WON'T HAVE MORE DELAYS OR MAYBE YOU'LL

10   BE ABLE TO SETTLE IT ONCE YOU'VE GOT EVERYTHING DONE OR

11   WHATEVER.

12   SO LET'S LOOK AGAIN AT YOUR SCHEDULE AND TRY TO TIGHTEN IT

13   UP.  WE'VE GOT PLAINTIFFS' DISCLOSURES ALREADY ON AUGUST 20TH;

14   DEFENDANTS' ARE DUE ON SEPTEMBER 19TH.  I GUESS THAT'S PRETTY

15   SOON.

16   SO MAYBE WE'LL STICK WITH THAT DATE AND YOU CAN JUST MAKE

17   SURE YOU MEET THAT, OR EVEN BETTER, IF YOU HAVE SOME OF THEM

18   READY EARLIER, YOU COULD DISCLOSE SOME EARLIER OR AT LEAST YOU

19   COULD DISCLOSE THEIR IDENTITY SO THAT WE COULD START

20   SCHEDULING THEIR DEPO DATES AND MAKE SURE WE DON'T GET A BIG

21   DELAY MOUNTING UP LIKE YOU DID WITH OUR FACT DEPOS, 'CAUSE

22   YOU'VE GOT -- YOU'VE GIVEN YOURSELF ALMOST TWO MONTHS FOR

23   EXPERT DISCOVERY.  MAYBE WE COULD SHORTEN THAT UP A LITTLE

24   BIT, TRY AND GET IT DONE BEFORE THANKSGIVING, 'CAUSE YOU'RE

25   GOING TO HAVE A PRETTY HARD TIME GETTING IT DONE AFTER

1    THANKSGIVING ANYWAY.

2          **MS. CHILDERS:**  YOU KNOW, WE HAVE REACHED OUT TO

3    PLAINTIFFS' COUNSEL TO REQUEST DATES FOR THEIR EXPERTS, AND --

4          **MR. HAVERTY:**  AND I'M -- AND I'M WORKING ON THAT,

5    YOUR HONOR.

6          **MS. CHILDERS:**  AND IT -- FROM THE PRELIMINARY

7    INFORMATION THAT WE HAVE FROM THE PLAINTIFFS' COUNSEL, IT

8    WOULD BE DIFFICULT FOR US TO AGREE ON A SCHEDULE IF WE WERE TO

9    TIGHTEN THE EXPERT DISCOVERY -- THE -- THE COMPLETION OF

10   EXPERT DISCOVERY IS DECEMBER 10, 2013, AND IT DOES SEEM THAT

11   WE WOULD NEED THAT TIME -- IT SEEMS THAT IT WOULD BE ABOUT 13

12   INDIVIDUALS AND TRAVEL TO GET TO THESE DEPOSITIONS.

13      AND IT SEEMS LIKE THE EXPERTS ARE HAVING, YOU KNOW, SOME

14   PARTICULAR -- OR ACTUALLY, I BELIEVE IT WAS KEVIN HAVERTY,

15   PLAINTIFFS' COUNSEL, HAS SOME PARTICULAR CONFLICTS EARLY ON.

16      IT LOOKS LIKE HE HAS A FOUR-WEEK-LONG TRIAL STARTING ON

17   OCTOBER 7TH.

18          **MR. HAVERTY:**  AND, YOUR HONOR, I JUST FOUND OUT TODAY

19   THAT'S -- THAT'S A RE (PHONETIC) HOLD, AND IT'S PROBABLY NOT

20   GOING TO GO, SO WE CAN PROBABLY LOOK TO SCHEDULE THESE

21   DEPOSITIONS IN EARLY OCTOBER.

22          **THE COURT:**  GOOD.  LET'S --

23          **MR. HAVERTY:**  I ONLY HAVE THREE EXPERTS.

24          **THE COURT:**  ALL RIGHT.  LET'S TRY FOR EXPERT

25   DISCOVERY CUTOFF ON NOVEMBER 27TH, THE DAY BEFORE

1   THANKSGIVING.

2        AND I WANT -- I'D LIKE FOR YOU TO -- FOR THE PLAINTIFF TO

3   GIVE DATES FOR YOUR EXPERTS ASAP, LIKE AS SOON AS THE

4   DEFENDANTS WANT THEM TILL --

5            **MR. HAVERTY:** I'LL TRY TO GET THAT TO THEM NEXT WEEK.

6            **THE COURT:** AND GIVE THEM AS MANY POSSIBLE DATES AS

7   YOU CAN. ANY DATE THAT YOU'RE NOT GIVING THEM, SAY WHY THAT

8   IS: DOCTOR IN SURGERY, PLAINTIFF'S ATTORNEY IN LONG-STANDING

9   DEPOSITION THAT CAN'T BE CHANGED.

10       AND THEN I'D LIKE THE DEFENDANTS -- SURELY YOU AT LEAST

11  KNOW WHO THESE PEOPLE ARE AND IT'S NOT GOING TO GIVE A HUGE

12  ADVANTAGE IF YOU AT LEAST DISCLOSE IDENTITIES, SO WHY DON'T

13  YOU, EVEN BEFORE THE 19TH WHEN YOU'RE DISCLOSING THEIR

14  REPORTS, MAYBE IN THE NEXT COUPLE DAYS, DISCLOSE THEIR

15  IDENTITIES AND THEIR SCHEDULES SO THAT YOU CAN START

16  SCHEDULING THE DEFENDANTS' PEOPLE AS WELL AS THE PLAINTIFFS'

17  PEOPLE AND GET THEM ALL ON LINE.

18           **MS. SHAFROTH:** YOUR HONOR, IF I MAY, WE COULD GIVE

19  TENTATIVE DATES WITH -- WITHOUT DISCLOSING THE IDENTITIES

20  PERHAPS SINCE WE'RE STILL WORKING ON THE REPORTS -- GIVE

21  TENTATIVE DATES WITH WHAT TOPIC THE EXPERT WILL BE COVERING,

22  IF THAT WOULD WORK.

23           **THE COURT:** OKAY.

24           **MS. CHILDERS:** AND THAT WOULD ALLOW THE DEFENDANTS TO

25  CONFER FURTHER ON EXPERTS AND DO THEIR BEST TO COMBINE IF THEY

```
 1    CAN POSSIBLY --

 2              THE COURT:   OKAY.  ALL RIGHT.  WELL, DO THAT AGAIN.

 3       AND, AGAIN, YOU'VE GOT TO BE FLEXIBLE ON THE THESE DATES.

 4    THIS IS AN OLD CASE.  IT'S GOT TO TAKE SOME PRIORITY, SO IF

 5    YOUR EXPERT'S BUSY GOING TO HIS CABIN, MAYBE HE DOESN'T GET TO

 6    GO TO HIS CABIN.  IF YOU'RE BUSY -- IF YOU WANT TO DO I DON'T

 7    KNOW WHAT, MAYBE YOU'LL HAVE TO RESCHEDULE --

 8              MS. CHILDERS:   YES, YOUR HONOR.

 9              THE COURT:   -- AND PRIORITIZE GETTING THIS THING

10    DONE.

11       SO IF WE FINISH EXPERT DISCOVERY ON NOVEMBER 27TH, WHO'S

12    GOING TO FILE A CASE DISPOSITIVE MOTION?  ONLY DEFENDANTS?  OR

13    IS PLAINTIFF FILING ONE?

14              MS. CHILDERS:   THE DEFENDANTS WILL, YOUR HONOR.

15              MR. HAVERTY:   I --

16              THE COURT:   PLAINTIFF ISN'T PLANNING ON FILING CASE

17    DISPOSITIVE MOTION, I TAKE IT?

18              MR. HAVERTY:   I -- I CAN'T SEE, YOU KNOW, HOW --

19    WELL, I HADN'T SEEN THEIR EXPERT REPORTS YET, BUT I WOULD

20    ANTICIPATE, NO, NOT FILING ANY SUMMARY JUDGMENT.

21              THE COURT:   NO.

22                   (SIMULTANEOUS COLLOQUY.)

23              THE COURT:   WHEN WHAT YOU THOUGHT YOU WERE GOING TO

24    HAVE YOUR MOTION HEARD ON FEBRUARY 13TH, WHEN WERE YOU -- WHAT

25    KIND OF BRIEFING SCHEDULE WERE YOU THINKING OF?  WHEN WERE YOU
```

1    THINKING OF FILING IT.  OH, I SEE.  YOU SAY -- OH, YOU WERE

2    GOING TO HAVE PLAINTIFF FILE THEIR MOTION SIX WEEKS BEFORE.

3        WILL YOU -- WILL THE PLAINTIFF HAVE DAUBERT MOTIONS?

4            MR. HAVERTY:  I -- IN ALL CANDOR, YOUR HONOR, I'VE

5    NEVER FILED A DAUBERT MOTION AS A PLAINTIFF, BUT I CAN'T

6    COMMENT ON THAT UNTIL I'VE SEEN THEIR EXPERT REPORTS AND TAKEN

7    THEIR DEPOSITIONS.  I DON'T ANTICIPATE IT.  THAT'S WHAT I

8    WOULD SAY, YOUR HONOR.

9            THE COURT:  WELL, WHY DON'T WE --

10           MS. CHILDERS:  AND, YOUR HONOR, FROM THE DEFENDANTS'

11   PERSPECTIVE, THE FOLKS AT OUR -- IN OUR SIDE THAT -- THAT WILL

12   BE WORKING ON THESE MOTIONS FELT LIKE THIS SCHEDULE WAS PRETTY

13   AGGRESSIVE AT THE TIME, AND IF WE COULD KEEP THE -- THE

14   SCHEDULE -- THIS PART OF THE SCHEDULE IN PLACE, I THINK IT

15   WOULD BE VERY HELPFUL TO PROVIDING MEANINGFUL INFORMATION TO

16   THE COURT.

17           MS. SHAFROTH:  AND THIS SCHEDULE IS TRACKING FROM THE

18   ORIGINAL CASE MANAGEMENT ORDER, THE TIME FRAMES.

19           THE COURT:  WELL, WHY DON'T WE HAVE THE PLAINTIFF

20   FILE ANY SUMMARY JUDGMENT OR DAUBERT --

21       SO YOU WERE -- WHEN WERE THE DEFENDANTS GOING TO FILE?

22           MS. CHILDERS:  WE WOULD BE FILING -- WOULD IT BE --

23           MS. SHAFROTH:  THREE WEEKS.

24           MS. CHILDERS:  THREE WEEKS BEFORE FEBRUARY 13TH, SO

25   ON A CALENDAR WHICH WE HAVE HERE --

1     **THE COURT:** WELL, YOU WOULD FILE FIVE WEEKS BEFORE

2     THE 13TH BECAUSE YOU'D BE FILING A MOTION THAT YOU'D HAVE TO

3     NOTICE FOR FIVE WEEKS -- ONE, TWO, THREE, FOUR, FIVE -- SO

4     YOU'D HAVE TO FILE ON THE 9TH.

5     **MS. SHAFROTH:** I THINK THE ISSUE, YOUR HONOR, WAS

6     THAT IT WAS SUPPOSED TO BE COMBINED WITH OUR OPPOSITION TO

7     PLAINTIFFS' SUMMARY JUDGMENT AND DAUBERT MOTIONS. AT THE TIME

8     THEY HAD NOTED THAT THEY MIGHT FILE THOSE, AND SO WE NEEDED

9     MORE THAN A WEEK IN ORDER TO FILE OPPOSITIONS.

10    **THE COURT:** OKAY. WELL, LET'S HAVE THE PLAINTIFF

11    FILE ON DECEMBER 19TH ANY SUMMARY JUDGMENT OR DAUBERT MOTION

12    THAT YOU MIGHT WANT TO FILE. AND THEN LET'S HAVE THE

13    DEFENDANT FILE ITS OPPOSITION AND ITS MOTION FOR SUMMARY

14    JUDGMENT ON THE 9TH OF JANUARY. AND THE -- THE IDEAL BRIEF

15    WOULD BE COMBINED, ALL OF YOU, DAUBERT AND SUMMARY JUDGMENT.

16    IF YOU CAN'T DO THAT, THEN DO IT ANYWAY, BUT YOU COULD

17    HAVE SEPARATE SECTIONS OF IT. BUT I DON'T WANT TO READ, LIKE,

18    THREE DIFFERENT FACT STATEMENTS AND THREE DIFFERENT STATEMENTS

19    OF WHAT IS THE STANDARD FOR SUMMARY JUDGMENT AND ALL OF THAT.

20    SO WORK TOGETHER ON IT, AND IF YOU NEED A SEPARATE SECTION ON

21    A GIVEN DEFENDANT, THEN HAVE A SEPARATE SECTION AND MOVE FOR

22    AN OVERLONG BRIEF.

23    **MR. HAVERTY:** YOUR HONOR, WE COULD -- WE ALREADY HAVE

24    EXPERIENCE DOING THAT WITH THE ISSUE ON DISCOVERY, SO WE

25    CAN -- WE CAN WORK THAT OUT.

```
1          MR. HALLENBECK:  YOUR HONOR, THIS, PRENT HALLENBECK

2    AGAIN FOR TEVA PHARMACEUTICALS U.S.A.

3       WOULD YOU LIKE TEVA TO -- THERE'S A TOTALLY SEPARATE ISSUE

4    THAT'S ONLY RELEVANT TO TEVA.  AS I SAY, IT'S HAND-IN-GLOVE

5    WITH GSK'S SUMMARY JUDGMENT MOTION.  WOULD YOU LIKE US TO FILE

6    THAT EVEN WITH THE MOTION FOR RECONSIDERATION PENDING?

7          THE COURT:  NO, I'D LIKE YOU TO INCLUDE IT IN THIS

8    OMNIBUS MOTION THAT I'M TALKING ABOUT.  YOU'RE ONE OF THE

9    DEFENDANTS, AND YOU'LL BE IN THIS SAME BRIEF THAT I'M TALKING

10   ABOUT.

11         MR. HALLENBECK:  OKAY.  SO THERE -- THE -- TEVA CAN'T

12   FILE A SEPARATE MOTION EARLY.

13         THE COURT:  CORRECT.

14         MR. HALLENBECK:  OKAY.

15         THE COURT:  SO THEN WE'LL HAVE THE PLAINTIFF FILE ITS

16   OPPOSITION TO THE MOTION TO THE SUMMARY JUDGMENT MOTION AND

17   ITS OPPOSITION ON DEFENDANTS' DAUBERT MOTIONS AND ITS REPLY ON

18   ANY DAUBERT MOTIONS IT MIGHT HAVE FILED OR HE MIGHT HAVE FILED

19   ON THE 23RD.

20       WE'LL HAVE THE FINAL REPLY FROM THE DEFENDANTS ON THE

21   SUMMARY JUDGMENT MOTION ON THE 30TH, AND WE'LL HEAR IT ON THE

22   13TH AT 2 O'CLOCK.

23       WE'LL HAVE A FURTHER CASE MANAGEMENT CONFERENCE ON THE

24   13TH AT 2 O'CLOCK.

25       WHY DON'T YOU GO AHEAD AND SET UP A MEDIATION, LET'S SAY,
```

1   IN APRIL. YOU CAN EITHER GO BACK TO JUDGE WESTERFIELD, OR YOU

2   CAN PICK A DIFFERENT PRIVATE MEDIATOR IF YOU THINK SOME NEW

3   BLOOD WOULD BE BETTER.

4      IF YOU CAN'T AGREE ON PRIVATE MEDIATION, THEN I'LL SEND

5   YOU TO A MAGISTRATE JUDGE, SO LET ME KNOW THAT, LET'S SAY,

6   WITHIN A WEEK IF YOU'RE NOT GOING TO WANT TO GO BACK TO A

7   PRIVATE MEDIATOR.

8         **THE CLERK:** I'M SORRY. WITHIN A WEEK FROM TODAY?

9         **THE COURT:** YEAH.

10         **THE CLERK:** OKAY.

11         **MS. CHILDERS:** THANK YOU, YOUR HONOR.

12         **THE COURT:** AND IN TERMS OF A DATE --

13         **MR. HAVERTY:** THANK YOU, YOUR HONOR.

14         **THE COURT:** -- THREE WEEKS IN A ROW, I CAN GIVE YOU I

15   GUESS SEPTEMBER 2ND, AND THAT WILL BE A PRETRIAL CONFERENCE --

16   WELL, LET'S HAVE THE PRETRIAL CONFERENCE IN JUNE. LET'S SAY

17   JUNE 4TH AT 2 O'CLOCK FOR A PRETRIAL CONFERENCE. AND WE'LL

18   HAVE A -- LET'S CALL IT A -- AT MOST, A 14-DAY TRIAL SINCE

19   THAT'S LABOR DAY WEEK THAT YOU'LL START. THAT'S A SHORT WEEK,

20   SO TRY TO GET IT SHORTER THAN 14 DAYS, BUT 14 AT THE MOST

21   STARTING SEPTEMBER 2ND.

22      NOW, YOU'RE TRAILING. YOU'RE TRAILING AN '05 CASE, BUT

23   YOU'LL GO IF THEY DON'T, WHICH YOU NEVER KNOW. AND IF THEY DO

24   GO, THEN YOU'LL HAVE -- YOU'LL START SOMETIME IN SEPTEMBER AS

25   SOON AS THEY'RE FINISHED.

```
1           MS. CHILDERS:  THANK YOU, YOUR HONOR.

2           MR. HAVERTY:  NICE TIME OF YEAR TO BE IN NORTHERN

3    CALIFORNIA.

4           THE COURT:  IT IS ACTUALLY, BUT YOU WON'T BE OUT

5    MUCH.

6                          (LAUGHTER.)

7           MR. HAVERTY:  JUST CROSSING THE STREET FROM THE HOTEL

8    HERE.

9           THE COURT:  RIGHT.  THAT WILL BE IT.

10          MS. CHILDERS:  THANK YOU.

11          THE COURT:  OKAY.  ANYTHING ELSE?

12          MS. CHILDERS:  NO, THAT'S ALL.

13          MR. HAVERTY:  THANK YOU.

14          MR. HALLENBECK:  THANKS VERY MUCH, YOUR HONOR.

15          THE COURT:  AND DON'T BE ASKING FOR ANY CONTINUANCES.

16       HE PROBABLY DIDN'T HEAR THAT.  TELL HIM I SAID SO.

17          MS. CHILDERS:  WE WILL.

18          THE COURT:  WE'RE GOING TO STICK TO THIS.

19          MS. CHILDERS:  THANK YOU, YOUR HONOR.  OUR APOLOGIES.

20          (PROCEEDINGS WERE CONCLUDED AT 2:41 P.M.)

21                          --O0O--

22

23

24

25
```

1

2                    **CERTIFICATE OF REPORTER**

3

4            I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

5    FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

6    I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,

7    NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS

8    HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR

9    OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

10

11   _____

12            RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

13                    SUNDAY, SEPTEMBER 15, 2013

14

15

16

17

18

19

20

21

22

23

24

25

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*